**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AMERICAN WILD HORSE CAMPAIGN,

*Plaintiff,*

v.

BUREAU OF LAND MANAGEMENT,

*Defendant.*

Civil Action No. 22-2972 (RDM)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**ATTORNEY FEES AND COSTS**

# TABLE OF CONTENTS

I.    INTRODUCTION……………………………………………………………………6

II.   BACKGROUND AND PROCEDURAL HISTORY………………………….…………8

III.  ARGUMENT………………………………………………………….....………14

   A.  An Award Would Fulfill the Purpose of FOIA's Fee-Shifting Provision………....…14

   B.  An Award of Fees Upholds Congressional Intent for
       FOIA Litigation to Continue…………………………………………………….......15

   C.  Plaintiff is Eligible for an Award of Fees and Costs………………...……………17

       1.  Defendant's Initial Position………………………………………….…….……18

       2.  Defendant's First Change in Position………………………………...…………19

       3.  Defendant's Second Change in Position………………….…..…………………21

       4.  Defendant's Third Change in Position…………………………….……………22

       5.   Plaintiff's Suit was Necessary……………………………………….…………24

   D.  Plaintiff is Entitled to an Award of Fees and Costs……………….………………27

       1.  Factor One: Benefit to the Public………………………………….……………27

       2.  Factor Two: Commercial Benefit of Complainant……………………...………31

       3.  Factor Three: Nature of Complainant's Interest in the Records Sought….....…32

       4.  Factor Four: Whether the Government's Withholding
           of the Records Sought had Reasonable Basis in Law………………...………32

           (a)  Defendant's Delay was Not Reasonable……………………………34

           (b)  Defendant's Position, that Plaintiff's Request Failed to Reasonably
                Describe the Records it Sought, was Not Reasonable………....……34

           (c)  Defendant's Failure to Seek Clarification on the Request
                During the Administrative Phase was Not Reasonable ……………37

   E.  Plaintiff's Fee Request is Reasonable…………………….……………………38

       1.  Plaintiff Has Charged Reasonable Rates…………………………………39

       2.  Plaintiff Spent a Reasonable Number of Hours……………………...………40

       3.  Other Costs Incurred were Reasonable …………………………………...…41

       4.  Plaintiff Can Recover Attorney Fees
           for Reasonable Time Spent on Settlement………………………………...…41

IV.   CONCLUSION………………………………………………………………42

# TABLE OF AUTHORITIES

## Cases

*Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521 (D.C. Cir. 2011)........................17

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Hum. Res.*,
    532 U.S. 598 (2001)...................................................................................................17

*Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 696 F.3d 1 (D.C. Cir. 2012)....................42

*\*Church of Scientology of Cal. v. Harris*, 653 F.2d 584 (D.C. Cir. 1981)............................passim

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*,
    820 F. Supp. 2d 39 (D.D.C. 2011)..........................................................................33, 36

*Coffey v. U.S. Bureau of Land Mgmt.*, 316 F. Supp. 3d 168 (D.D.C. 2018)..........................41–42

*Comm'r, Immigr. & Naturalization Serv. v. Jean*, 496 U.S. 154 (1990)......................................42

*Copeland v. Marshall*, 641 F.2d 880 (D.C. Cir. 1980) (en banc)...........................................42–43

*Cotton v. Heyman*, 63 F.3d 1115 (D.C. Cir. 1995)...........................................................................28

*Cox v. U.S. Dep't of Just.*, 601 F.2d 1 (D.C. Cir. 1979)....................................................17–18, 24

*Cuneo v. Rumsfeld*, 553 F.2d 1360 (D.C. Cir. 1977)......................................................................27

*\*Davy v. Cent. Intel. Agency*, 550 F.3d 1155 (D.C. Cir. 2008)..............................................passim

*Dep't of the Air Force v. Rose*, 425 U.S. 352 (1976)....................................................................14

*Elec. Priv. Info. Ctr. v. Fed. Bureau of Investigation*, 80 F. Supp. 3d 149 (D.D.C. 2015)............41

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*,
    811 F. Supp. 2d 216 (D.D.C. 2011)...............................................................27, 31, 38, 42

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*,
    197 F. Supp. 3d 290 (D.D.C. 2016).........................................................................41–42

*Elec. Priv.  Info. Ctr. v. U.S. Dep't of Homeland Sec.*,
    218 F. Supp. 3d 27 (D.D.C. 2016).............................................................21, 26–27, 33

*Fenster v. Brown*, 617 F.2d 740 (D.C. Cir. 1979).......................................................................28

*First Amend. Coal. v. U.S. Dep't of Just.*, 878 F.3d 1119 (9th Cir. 2017)....................................16

*Freedom Watch, Inc. v. U.S. Dep't of State*, 77 F. Supp. 3d 177 (D.D.C. 2015)............................14

*Hall & Assocs. v. U.S. Env't Prot. Agency*, 83 F. Supp. 3d 92 (D.D.C 2015)................................37

*J.T. v. Dist. of Columbia*, 652 F. Supp. 3d 11 (D.D.C. 2023)............................................................39

*Jud. Watch, Inc. v. U.S. Dep't of Justice*, 774 F. Supp. 2d 225 (D.D.C. 2011)..............................38

*LaCedra v. Exec. Off. for U.S. Att'ys*, 317 F.3d 345 (D.C. Cir. 2003)............................................34

*LaSalle Extension Univ. v. Fed. Trade Comm'n*, 627 F.2d 481 (D.C. Cir. 1980)..........................14

*Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007)....................................................34

*Md. Dep't of Hum. Res. v. Sullivan*, 738 F. Supp. 555 (D.D.C. 1990)............................................27

*McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707 (D.C. Cir. 2014)............................................17

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir 2008)................................................40, 42

*Morley v. Cent. Intel. Agency*, 810 F.3d 841 (D.C. Cir. 2016)..................................................27–28

*Nat'l Lab. Rels. Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978)...............................14, 16

*Nat'l Sec. Archive v. U.S. Dep't of Def.*, 530 F. Supp. 2d 198 (D.D.C. 2008)..............................32

*Nation Mag. v. U.S. Customs Service*, 71 F.3d 885 (1995)..............................................................34

*Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704 (D.C. Cir. 1977)......................14–15, 33

*Nw. Coal. for Alts. to Pesticides v. Browner*, 965 F. Supp. 59 (D.D.C. 1997)..............................28

*Parker v. U.S. Dep't of Just. Exec. Off. for U.S. Att'ys,* 852 F. Supp. 2d 1 (D.D.C. 2012)...........37

*Piper v. U.S. Dep't of Just.*, 339 F. Supp. 2d 13 (D.D.C. 2004)................................................27, 40

*Protect the Pub.'s Tr. v. Internal Revenue Serv.*,
    No. 23-CV-340-RCL, 2024 WL 663427 (D.D.C. Feb. 16, 2024)....................7, 19, 21–23

*Ruotolo v. Dep't of Justice, Tax Div.*, 53 F.3d 4 (2d Cir. 1995)......................................................37

*Sheppard v. U.S. Dep't of Just.*,
    No. 4:17-cv-1037-NKL 2021, WL 4304218 (W.D. Mo. Sept. 21, 2021).........................16

*Short v. U.S. Army Corps of Eng'rs,* 613 F. Supp. 2d 103 (D.D.C. 2009)....................................24

*Story of Stuff Project v. U.S. Forest Serv.*,
No. 17-cv-00098-APM, 2022 WL 1521843 (D.D.C. May 13, 2022)..............................33

*Summers v. U.S. Dep't of Just.*, 569 F.3d 500 (D.C. Cir. 2009).......................................17

*Tax Analysts v. U.S. Dep't of Just.*, 965 F.2d 1092 (D.C. Cir. 1992)..........................15–16, 31–33

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261 (2021).....................................14, 33

*Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476 (D.C. Cir. 1984)..........................................24

*WP Co. LLC v. U.S. Dep't of State*, 506 F. Supp. 3d 11 (D.D.C. 2020).........................................25

*Yeager v. Drug Enf't Admin.*, 678 F.2d 315 (D.C. Cir. 1982).........................................34

*Zynovieva v. U.S. Dep't of State*,
No. 19-CV-3445, 2023 WL 2755599 (D.D.C. Mar. 31, 2023),
*aff'd*, No. 23-5120, 2024 WL 1946592 (D.C. Cir. Apr. 30, 2024).............................24–25

**Statutory Provisions**

5. U.S.C. § 552(a)(3)(A)..............................................................................34

*5 U.S.C. § 552(a)(4)(E)........................................................................passim

5 U.S.C. § 552 (a)(6)(A)(i)..........................................................................34

OPEN Government Act of 2007, Pub. L. No. 110-75, § 4, 121 Stat. 2524
(codified at 5 U.S.C. § 552(a)(4)(E))...........................................................15

**Other Authorities**

40 C.F.R. § 2.102(c).................................................................................37

43 C.F.R. § 2.5(d).................................................................................37–38

153 CONG. REC. S15703 (daily ed. Dec. 14, 2007) (statement of Sen. Leahy)........................15

Bureau of Land Mgmt., *Make a Freedom of Information Act (FOIA) Request*,
https://www.blm.gov/about/foia/submit-a-foia-request (last visited Dec. 12, 2024).........38

S. REP. NO. 93–854 (1974).............................................................................15

## I.    INTRODUCTION

Plaintiff, American Wild Horse Campaign (now doing business as American Wild Horse Conservation) ("AWHC" or "Plaintiff"), has moved the Court for an award of attorney fees and other litigation costs pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E), in civil action against the Defendant, Bureau of Land Management ("BLM" or "Defendant" or "agency"). The FOIA states that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." *Id.* Plaintiff substantially prevailed in the litigation and here demonstrates that it is eligible and entitled to attorney fees and costs and that fees and costs sought are reasonable.

As part of its investigatory work on behalf of wild horses, on July 22, 2021, Plaintiff submitted a FOIA request for records to Defendant. Declaration of Amelia Martine Perrin ("Perrin Decl.") ¶¶ 16–17 [filed herein]; Dkt. 1-5 at 2–8 (Complaint "Compl." Ex. 1). The records sought in this case were a part of AWHC's investigation into the BLM's Adoption Incentive Program. Perrin Decl. ¶ 12 [ filed herein]. More specifically, Plaintiff made this request, "to learn more about the BLM's knowledge and oversight of horses ending up in slaughter auctions, something which the BLM has adamantly denied publicly for years and has stated there is no credible evidence of horses ending up in slaughter." *Id.* ¶ 16.

On July 22, 2021, Defendant confirmed receipt of the request. *Id.* ¶ 20; Dkt. 1-6 at 20 (Compl. Ex. 2). Having received no communication from Defendant seeking clarification on the request, no records, and no final determination from Defendant by October 2022, Plaintiff saw no other option but to commence litigation to obtain responsive records. Perrin Decl. ¶¶ 35, 37–38 [filed herein]. Plaintiff directed Plaintiff's counsel to file a Complaint on October 2, 2022.

*Id.* ¶ 39.

Defendant filed a Motion to Dismiss on November 15, 2022. *Id.* ¶ 43; Dkt. 9 (Defendant's Motion to Dismiss). Plaintiff opposed the dismissal. Perrin Decl. ¶ 43 [filed herein]; Dkt. 10 (Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss). A motion hearing was held where this Court denied Defendant's Motion to Dismiss. *See generally,* Dkt. 18 (Motion Hearing Transcript, July 13, 2023); Minute Entry, July 13, 2023. After prevailing against the Motion to Dismiss, Plaintiff caused Defendant to release several thousand pages of records responsive to its request. *See* Perrin Decl. ¶¶ 51–52, 64–65 [filed herein]. Defendant released the responsive records to Plaintiff in March and April 2024. *See* Dkt. 19 at 1 (Joint Status Report "JSR"). *See also* Dkt. 20 at 1 (JSR). On August 19, 2024, Plaintiff advised it was satisfied with the adequacy of Defendant's search and withholdings. Perrin Decl. ¶ 53 [filed herein]; Dkt. 21 at 1 (JSR). After Plaintiff unsuccessfully attempted settlement of attorney fees and costs, the parties agreed to move forward with briefing. Perrin Decl. ¶¶ 55–56 [filed herein]; Declaration of C. Peter Sorenson ("Sorenson Decl.") ¶¶ 16–17 [filed herein].

In this case, Plaintiff's suit was "necessary" and bore a "causal nexus" to the Defendant's action. *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 588 (D.C. Cir. 1981). Plaintiff achieved the relief it sought because an "obdurate agency changed position" after previously failing to seek clarification on the request and refusing to search for and release all responsive records. *See Protect the Pub.'s Tr. v. Internal Revenue Serv.,* No. 23-CV-340-RCL, 2024 WL 663427, at n7 (D.D.C. Feb. 16, 2024) (internal citation omitted).

The records released as a result of this judicial review provide valuable information about a matter of public concern and were sought for the benefit of the public, rather than for any

private or commercial gain. *See Davy v. Cent. Intel. Agency,* 550 F.3d 1155, 1160–62 (D.C. Cir. 2008). *See* Perrin Decl. ¶¶ 8–9 [filed herein]. Defendant had no "colorable" or "reasonable basis" for "not disclosing the material until after [litigation]." *Davy,* 550 F.3d at 1163. As such, Plaintiff demonstrates both eligibility and entitlement and respectfully requests that this Court award the reasonable fees and costs sought.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a nonprofit organization dedicated to preserving wild horses and burros in free-roaming herds for generations to come, as part of our national heritage. *See* Perrin Decl. ¶¶ 3–4 [filed herein]. Plaintiff engages in litigation, legislation, and advocacy, including direct community outreach, social media organizing, and media relations. *Id.* ¶¶ 6, 9, 74. As a necessary component for each of those roles, Plaintiff actively monitors government management of public lands, and the FOIA is a critical tool for its success. *See id.* ¶¶ 8, 72.

AWHC's Investigation Program exposes abuse, fraud, and waste within federal programs affecting wild horses and burros, promotes accountability, humane treatment, and sustainable stewardship of wild horses and burros by the BLM, who is charged with their management. *Id.* ¶ 7.

Through Plaintiff's extensive investigation into the Adoption Incentive Program, Plaintiff learned the identity of BLM employee James or Jimmy Galloway, and of Mr. Galloway's role with the BLM, which involves "the Wild Horse and Burro Program and off-range adoption compliance, including compliance inspections, repossession of horses found at slaughter auctions or unlawfully sold, abuse cases, and general compliance to ensure adopters are treating horses in accordance with humane standards and BLM regulations." *Id.* ¶ 14. Plaintiff was especially concerned with issues identified within the New Mexico State Office and the Oklahoma Field

Office, related to Adoption Incentive Program animals ending up in slaughter auctions, also known as kill pens. *Id.* ¶ 15.

On July 22, 2021, Plaintiff submitted a FOIA request to Defendant. *Id.* ¶ 17; Dkt. 1-5 at 2–8 (Compl. Ex. 1). Defendant acknowledged receipt of the request that day and assigned FOIA Request number DOI-BLM-2021-005167. Perrin Decl. ¶ 20 [filed herein]; Dkt. 1-6 at 2 (Compl. Ex. 2). Plaintiff's request sought:

> [E]lectronic copy of all emails, faxes, letters, memoranda, proposals, reports, contracts, notes, telephone conversations (including text messages), and any other records generated between all Public Affairs staff, all Wild Horse and Burro Specialists, and all Field Managers under the jurisdiction of the Bureau of Land Management's ("BLM") Oklahoma Field Office with James Galloway or Jimmy Galloway.

> Perrin Decl. ¶ 18 [filed herein]; Dkt. 1-5 at 3 (Compl. Ex. 1).

The request sought records from January 1, 2020, to the present. Perrin Decl. ¶ 19 [filed herein]; Dkt. 1-5 at 3 (Compl. Ex. 1).

Between September 9, 2021, and September 15, 2022, Plaintiff sent nine estimated completion date ("ECD") demands to Defendant. Perrin Decl. ¶¶ 21–23, 27–31, 33 [filed herein]. In most instances, Defendant failed to respond to the ECD demands entirely. *Id*. ¶¶ 21–22, 27–30, 33. On January 10, 2022, the BLM New Mexico State Office informed Plaintiff that it was reviewing records that were submitted by the Oklahoma Field Office. *Id*. ¶ 25; Dkt. 1-11 at 2–3 (Compl. Ex. 7). However, six months later, on July 19, 2022, the BLM New Mexico State Office informed Plaintiff that the record review still had not begun. Perrin Decl. ¶ 32 [filed herein]; Dkt. 1-17 at 2 (Compl. Ex. 13). Defendant had also provided an estimated date of completion for the request, which came and went in January of 2022. Perrin Decl. ¶¶ 25–26 [filed herein]. And as of the time of the filing of the Complaint, Defendant's online portal listed an estimated date of completion of "9/10/2021." *Id.* ¶ 34; Dkt. 4-2 at 2 (Errata to Compl. Ex. 15).

Several of the demands for an estimated completion date that Plaintiff sent to Defendant included the language, "please let me know if your office has any questions about the request that I could answer." *See e.g.* Dkts. 1-7 at 2, 1-8 at 2, 1-9 at 2 (Compl. Exs. 3–5); Perrin Decl. ¶ 36 [filed herein]. During the administrative phase, Defendant never asked for Plaintiff to provide clarification on the request, nor did the BLM ask for additional information in order to fulfill the request. Perrin Decl. ¶ 35 [filed herein].

Compelled to sue the agency to force the release of records, Plaintiff filed its Complaint on October 2, 2022. *Id.* ¶¶ 37, 39; Dkt. 1 (Compl.). The Complaint specifically requested, *inter alia,* relief in the form of Defendant "conduct[ing] a reasonable search for records . . ." and "produc[ing] all non-exempt responsive records or portions of records." Perrin Decl. ¶ 42 [filed herein]; Dkt. 1 at 5 (Compl. ¶¶ i–ii).

On November 15, 2022, Defendant filed its Motion to Dismiss, alleging Plaintiff submitted a "confusingly drafted request, plagued with multiple overlapping layers of ambiguity[.]" Dkt. 9 at 1 (Defendant's Motion to Dismiss). Defendant alleged, "[e]ven liberally construed, the Campaign's FOIA request failed to reasonably describe the records it sought, for at least seven different reasons." *Id.* at 3. Defendant argued it was not required to "guess blindly what the Campaign really meant" and therefore was not obligated to search for and release any records to Plaintiff because its request did not "reasonably describe the records sought[.]" *Id.* at 8. Plaintiff filed its Opposition on November 29, 2022. Dkt. 10 (Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss). Defendant filed its Reply on December 20, 2022. Dkt. 12 (Defendant's Reply in Support of Motion to Dismiss).

On April 13, 2023, after the Motion to Dismiss had been pending for nearly four months, new counsel for the Defendant, reached out to counsel for Plaintiff to try to negotiate terms of a

search. Perrin Decl. ¶ 44 [filed herein]; Sorenson Decl. ¶ 29 [filed herein]. On April 17, 2023,

Plaintiff sent Defendant an initial response to Defendant's first search proposal. Perrin Decl. ¶ 44

[filed herein]; Sorenson Decl. ¶ 29 [filed herein]. Counsel for the parties exchanged emails

between April through June of 2023. Perrin Decl. ¶ 44 [filed herein]; Sorenson Decl. ¶ 29 [filed

herein]. At the end of June 2023, Plaintiff was working on the preparation of another response to

counsel for Defendant towards agreeing to a search proposal, but before that email could be

finalized and sent, on July 4, 2023, the Court ordered a motion hearing to be held on July 13,

2023. Perrin Decl. ¶ 44 [filed herein]; Sorenson Decl. ¶ 29 [filed herein]; Minute Order, July 4,

2023. No further negotiations between the parties towards agreeing to a search proposal took

place ahead of the hearing. Perrin Decl. ¶ 44 [filed herein]; Sorenson Decl. ¶ 29 [filed herein].

At the hearing on Defendant's Motion, this Court swiftly rejected Defendant's argument

for dismissal, stating, "if I'm able to read it correctly like that, why is it a problem for the Bureau

of Land Management? Isn't it sufficiently clear? I mean, I just picked it up; I have no expertise. I

read it, and that seems to be what it says . . ." Dkt. 18 (Motion Hearing Transcript 3:14–18, July

13, 2023). Defendant's Motion to Dismiss was denied, and the Court instructed the parties to

proceed based on the interpretation of the FOIA request determined at the hearing. Minute Entry,

July 13, 2023; Dkt. 18 (Motion Hearing Transcript 7:2–13, July 13, 2023). Defendant filed its

Answer on August 16, 2023, denying that Plaintiff was "entitled to the relief requested or to any

relief whatsoever." Dkt. 14 at 6 (Answer); Perrin Decl. ¶¶ 46–47 [filed herein].

The parties conferred on October 30, 2023, regarding the scope of the search that

Defendant was to perform. Perrin Decl. ¶ 49 [filed herein]; Dkt. 16 at 1 (JSR). In the November

29, 2023, Joint Status Report, the parties reported they had reached an agreement regarding the

scope of the search. Perrin Decl. ¶ 49 [filed herein]; Dkt. 16 at 1 (JSR). Specifically, Defendant

had provided Plaintiff with a document summarizing its search proposal, Plaintiff proposed additional search terms, and Defendant agreed to incorporate those terms into its search. Perrin Decl. ¶ 49 [filed herein]; Dkt. 16 at 1 (JSR). By May 20, 2024, Defendant had completed its search and released over 3,500 pages of responsive records to Plaintiff. Perrin Decl. ¶¶ 50–52 [filed herein]; Dkt. 20 at 1 (JSR). On August 19, 2024, Plaintiff advised it was satisfied with the adequacy of Defendant's search and its withholdings. Perrin Decl. ¶ 53 [filed herein]; Dkt. 21 at 1 (JSR).

Ahead of filing this Motion for Attorney Fees and Costs, Plaintiff attempted to reach a settlement with Defendant, and submitted a settlement proposal letter to Defendant on October 1, 2024. Perrin Decl. ¶ 55 [filed herein]; Sorenson Decl. ¶ 16 [filed herein]. On October 17, 2024, counsel for Defendant replied to the settlement demand and noted that he could seek approval to enter negotiations and ask Defendant if it would be willing to negotiate settlement but only if Plaintiff was willing to accept a significantly reduced offer. Perrin Decl. ¶ 56 [filed herein]; Sorenson Decl. ¶ 17 [filed herein]. There was no settlement and Plaintiff approved moving forward with setting a briefing schedule. Perrin Decl. ¶ 56 [filed herein]; Sorenson Decl. ¶ 17 [filed herein].

Plaintiff's counsel conferred with Defendant's counsel prior to filing this motion in an attempt to narrow the issues. Ex. 104, Plaintiff's Suggestion to Narrow Issues [filed herein]; Sorenson Decl. ¶ 18 [filed herein]. Defendant consented only to the use of the Fitzpatrick Matrix for Plaintiff's hourly rates. Sorenson Decl. ¶ 19 [filed herein].

In support of its Motion for Attorney Fees and Costs, Plaintiff has today filed the following documents to assist the Court:

Certification of Compliance with Local Rule 7(m)

Declaration of Amelia Martine Perrin

Declaration of Gianina Josephine Spano

Declaration of Thomas Herbert Housel

Declaration of C. Peter Sorenson and attached Exhibits, as follows:

Exhibit 101: Filing Fee Receipt

Exhibit 102: USPS Certified Mailing Receipts

Exhibit 103: Fitzpatrick Matrix

Exhibit 104: Plaintiff's Suggestion to Narrow Issues

Exhibit 105: MyCase Billing and Time Records

Exhibit 106: Summary of Work By Major Phase and Litigation Costs

Exhibit 107: Summary of Abbreviations

Plaintiff has also filed a proposed order.

   In billing for this case, Plaintiff used rates as indicated by the Fitzpatrick Matrix.

Defendant has agreed that the Fitzpatrick Matrix should govern any award of attorney fees.

Sorenson Decl. ¶ 19 [filed herein]. Plaintiff's legal team for this case included C. Peter Sorenson,

three associate attorneys[1] and the firm's Paralegals and Law Clerks. In addition to attorney fees,

Plaintiff has also reasonably incurred two specific other litigation costs: $402 for Plaintiff's filing

fee and $28.23 in postal fees for service on Defendant. Ex. 101, Filing Fee Receipt [filed herein];

Ex. 102, Certified Mailing Receipts [filed herein].

---

[1] Two of the three associate attorneys have billed their time at the appropriate attorney rates

according to the Fitzpatrick Matrix and one of the associate attorneys has billed his time at the

paralegal rate. *See* Sorenson Decl. ¶ 25 [filed herein].

### III.    ARGUMENT

The Freedom of Information Act ("FOIA") "mandates the disclosure of documents held by a federal agency unless the documents fall within one of nine enumerated exemptions." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021). FOIA ensures "an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Lab. Rel. Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Congress enacted FOIA to "pierce the veil of administrative secrecy, and to open agency actions to the lights of public scrutiny," *Freedom Watch, Inc. v. U.S. Dep't of State*, 77 F. Supp. 3d 177, 181 (D.D.C. 2015) (citing *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)), and to provide the public with "access to official information long shielded unnecessarily from public view." *Nat'l Lab. Rel. Bd.*, 437 U.S. at 242.

### A.    An Award Would Fulfill the Purpose of FOIA's Fee-Shifting Provision

FOIA contains a "fee-shifting" provision, permitting the District Court to award reasonable attorney fees and litigation costs to a plaintiff who has substantially prevailed. 5 U.S.C. § 552(a)(4)(E)(i). FOIA allows an award of attorney fees and costs to a prevailing plaintiff for two independent purposes: (1) "to encourage Freedom of Information Act suits that benefit the public interest," and (2) to serve "as compensation for enduring an agency's unreasonable obduracy in refusing to comply with the Freedom of Information Act's requirements." *LaSalle Extension Univ. v. Fed. Trade Comm'n*, 627 F.2d 481, 484 (D.C. Cir. 1980). "[A] grudging application of this provision . . . would dissuade those who have been denied information from invoking their right to judicial review . . ." *Nationwide Bldg. Maint., Inc. v. Sampson,* 559 F.2d 704, 715 (D.C. Cir. 1977). The provision for attorney fees under FOIA was enacted "on the knowledge that many FOIA plaintiffs do not have the financial resources or

economic incentives to pursue their requests through expensive litigation." *Davy*, 550 F.3d at 1158. Plaintiff—a nonprofit organization with limited resources—was only able to litigate and receive responsive records because of the fee-shifting provision, which allows for similarly-situated prevailing plaintiffs to recover fee awards.

### B.   An Award of Fees Upholds Congressional Intent for FOIA Litigation to Continue

Lawyers who take on contingency work, as was done in this case, often take on significant risk: a lawyer may put in hundreds of hours of work, invest thousands of dollars into one case, without receiving fees for months, years, or perhaps never receiving fees at all. Despite this risk, Congress wants lawyers to take on these cases and encourages meritorious FOIA litigation. Plaintiff respectfully requests that this Court read the fee-shifting provision of the FOIA as Congress intended—as an avenue to allow attorneys to take cases that benefit the public.

In 2007, Congress amended the FOIA. Among its amendments, Congress expanded access to attorney fees. OPEN Government Act of 2007, Pub. L. No. 110-75, § 4, 121 Stat. 2524 (codified at 5 U.S.C § 552(a)(4)(E)). These amendments were meant to "improve transparency" by "imposing real consequences on federal agencies for missing FOIA's 20-day statutory deadline." 153 CONG. REC. S15703 (daily ed. Dec. 14, 2007) (statement of Sen. Leahy). Congress clearly intended to strengthen a requester's ability to receive records under FOIA.

Attorney fee provisions are essential to continuing meritorious FOIA litigation. As discussed in *Davy v. Central Intelligence Agency*, many plaintiffs do not have the ability to pay private attorney fees. 550 F.3d at 1158 (quoting *Nationwide Bldg. Maint.*, 559 F.2d at 711 (citing S. REP. NO. 93–854, at 17 (1974)). "FOIA's attorney's fees provision . . . was designed to lower the 'often . . . insurmountable barriers presented by court costs and attorney's fees to the average

person requesting information under the FOIA.'" *Tax Analysts v. U.S. Dep't of Just.*, 965 F.2d 1092, 1095 (D.C. Cir. 1992) (citation omitted). "The award of FOIA counsel fees has as its fundamental purpose the facilitation of citizen access to the courts, and should not be subject to a grudging application." *First Amend. Coal. v. U.S. Dep't of Just.*, 878 F.3d 1119, 1130 (9th Cir. 2017) (internal quotation marks omitted).

The award of attorney fees is essential to the application of the FOIA. Denying attorney fees would discourage attorneys from representing clients *pro bono* in otherwise meritorious litigation. *Sheppard v. U.S. Dep't of Just.*, No. 4:17-cv-1037-NKL 2021, WL 4304218, at *4 (W.D. Mo. Sept. 21, 2021). Due to the inability for many FOIA requesters to afford a lawsuit against the Government, which has almost limitless resources in comparison, fewer meritorious FOIA lawsuits would be filed. FOIA ensures "an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Lab. Rel. Bd.*, 437 U.S. at 242. In the present case, Plaintiff received records only by pursuing litigation, exemplifying the critical importance of FOIA's fee-shifting provisions.

Without attorneys representing and advising clients on what is essentially a *pro bono* basis, fewer plaintiffs would obtain legal advice, leading to a flood of unmeritorious litigation and potential harassment of government agencies. Not only would this allow agencies to escape providing records for meritorious requests and cases—it would lead to undue burdens on both the courts and government agencies. AWHC, like many other nonprofit organizations, could not afford the costs of litigation from its own funds, and Plaintiff's counsel has not received any compensation for the services rendered. *See* Perrin Decl. ¶ 77 [filed herein]; Sorenson Decl. ¶ 1 [filed herein]. Without the award of attorney fees, the Freedom of Information Act would go

unenforced, with records hidden behind government paywalls—an obvious violation of the Congressional intent for enacting the Freedom of Information Act.

### C.   Plaintiff is Eligible for an Award of Fees and Costs

In order for a plaintiff to receive attorney fees, the plaintiff must prove they "substantially prevailed" in the litigation. 5 U.S.C. § 552 (a)(4)(E)(i). FOIA's attorney fees and litigation costs provision requires courts to engage in a two-step substantive inquiry. The Court must determine 1) if the plaintiff is eligible for an award of fees and costs and 2) if the plaintiff is entitled to the award. *See Brayton v. Off. of U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011); *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014). The award is always subject to the sound discretion of the District Court. In a FOIA lawsuit, "the court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552 (a)(4)(E)(i).

" [A] complainant has substantially prevailed if the complainant has obtained relief through either—(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). The latter form of relief is a codification of the "catalyst theory," *Summers v. U.S. Dep't of Just.*, 569 F.3d 500, 502 (D.C. Cir. 2009), which allows an award where a plaintiff is a "prevailing party" because the plaintiff achieved the desired result by bringing about a voluntary change in the defendant's conduct. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Hum. Res.*, 532 U.S. 598, 602 (2001). The key factor in determining whether the institution of litigation was a catalyst for causing the agency to release previously withheld documents is "whether the agency, upon actual and reasonable notice

of the request, made a good faith effort to search out material and to pass on whether it should be disclosed." *Cox v. U.S. Dep't of Just.*, 601 F.2d 1, 6 (D.C. Cir. 1979). The facts of this case establish that "prosecution of the action [can] reasonably be regarded as necessary to obtain the information," *Church of Scientology*, 653 F. 2d at 588 (citing *Cox*, 601 F.2d at 6), and "a causal nexus exists between [this] action and the agency's surrender of the information." *Id.* Defendant exhibited a voluntary and unilateral change in position at three different points in this litigation, and Plaintiff obtained the relief it sought, by causing Defendant to search for and release all responsive records.

### 1.  Defendant's Initial Position

Plaintiff submitted a FOIA request to the BLM on July 22, 2021. Perrin Decl. ¶ 17 [filed herein]; Dkt. 1-5 at 2–8 (Compl. Ex. 1). During the administrative phase of this case, on January 10, 2022, the BLM New Mexico State Office stated that it was reviewing at least some records submitted by the Oklahoma Field Office, and that barring any issues a response would be "dispatched by next week." Perrin Decl. ¶ 25 [filed herein]; Dkt. 1-11 at 2 (Compl. Ex. 7). However, over six months later on July 19, 2022, the BLM New Mexico State Office explained that it would *begin* its review of records once new, readable versions of those records were re-sent. Perrin Decl. ¶ 32 [filed herein]; Dkt. 1-17 at 2 (Compl. Ex. 13); Plaintiff received no further communications or responses from Defendant after the July 19, 2022, email. Perrin Decl. ¶ 33 [filed herein]. At no point during the administrative phase did Defendant seek clarification on the request or ask for additional information in order to fulfill the request. *Id.* ¶ 35.

Forced to litigate to vindicate its FOIA rights, Plaintiff filed its Complaint on October 2, 2022. *See id.* ¶¶ 37–39; Dkt. 1 (Compl.). Defendant responded by filing a Motion to Dismiss, alleging "[e]ven liberally construed, the Campaign's FOIA request failed to reasonably describe

the records it sought, for at least seven different reasons." Dkt. 9 at 3 (Motion to Dismiss).

Defendant argued it was not required to "guess blindly what the Campaign really meant" and

therefore was not obligated to search for and release any records to Plaintiff because its request

did not "reasonably describe the records sought[.]" *Id.* at 8. In sum, Defendant's initial position

was that Plaintiff's request was not reasonable as written and Defendant was not obligated to

search for or release responsive records. *Id.* at 2–3; Perrin Decl. ¶ 61 [filed herein]. Defendant

did offer a few limited and conflicting assurances that it was processing the request during the

administrative phase. *See* Perrin Decl. ¶ 58  [filed herein]. However, Defendant's stance at the

start of this litigation—as clearly stated in its Motion to Dismiss (Dkt. 9) and its Reply in

Support of Motion to Dismiss (Dkt. 12)—demonstrates that Defendant's initial position was one

of unwillingness to fulfill its requirements under FOIA.

### 2.  Defendant's First Change in Position

The first voluntary change in position by Defendant—caused by Plaintiff's pursuit of this

litigation—was Defendant's shift in position to one of willingness to agree to a search proposal.

The "catalyst theory . . . posits that a plaintiff is a prevailing party if it achieves the desired result

because the lawsuit brought about a voluntary change in the defendant's conduct." *Protect the*

*Pub.'s Tr.*, 2024 WL 663427 at *6 (internal citation omitted).

After Defendant's Motion to Dismiss had been pending for nearly four months, in a

striking reversal of position, new counsel for Defendant reached out to Plaintiff's counsel,

seeking to negotiate and agree to terms of a search. Sorenson Decl. ¶ 29 [filed herein]; Perrin

Decl. ¶ 44 [filed herein]. Between April through the end of June 2023, the parties exchanged

emails with the aim of agreeing to a search proposal. Sorenson Decl. ¶ 29 [filed herein]; Perrin

Decl. ¶ 44 [filed herein]. Before the parties could agree on a search proposal, the Court ordered a

motion hearing to be held on July 13, 2023. Minute Order, July 4, 2023. There were no further

negotiations between the parties ahead of the hearing. Sorenson Decl. ¶ 29 [filed herein]; Perrin

Decl. ¶ 44 [filed herein].

At the hearing on Defendant's Motion, the Court immediately offered its interpretation of

the request to the parties, and Plaintiff confirmed the Court's interpretation of the FOIA request.

Dkt. 18 (Motion Hearing Transcript 3:1–13, July 13, 2023). In the Court's words, "I mean, I just

picked it up; I have no expertise. I read it, and that seems to be what it says." *Id.* 3:17–18. The

Court denied Defendant's Motion and directed the parties to proceed based on the interpretation

of the request it provided from a plain reading of the text and the agreement of the parties. *Id.*

3:1–13; Minute Entry, July 13, 2023.

On September 25, 2023, the Court issued a Minute Order, requiring that "Defendant

confer with Plaintiff by regarding terms for a search responsive to Plaintiff's FOIA request."

Minute Order, September 25, 2024. The parties conferred on October 30, 2023, regarding the

scope of the search that the Defendant was to perform. Perrin Decl. ¶ 49 [filed herein]; Dkt 16 at

1 (JSR). Defendant provided Plaintiff with a document summarizing its search proposal. Perrin

Decl. ¶ 49 [filed herein]; Dkt 16 at 1 (JSR). The document included proposed search terms,

proposed dates for the search, a proposal for which BLM employees would conduct a records

search, and the forms that would be used to document the search. *See* Perrin Decl. ¶ 49 [filed

herein]; Dkt 16 at 1 (JSR). In response, Plaintiff proposed additional search terms to be utilized

by Defendant in conducting its search. Perrin Decl. ¶ 49 [filed herein]; Dkt 16 at 1 (JSR). On

November 28, 2023, Defendant agreed to Plaintiff's additional search terms. Perrin Decl. ¶ 49

[filed herein]. More specifically, Defendant notified Plaintiff that it was in the process of

completing the search pursuant to Defendant's proposed search document and the supplemental

terms Plaintiff proposed during the parties conferral. *Id.*

As a result of Plaintiff's litigation, and under the threat of a pending Motion to Dismiss (which Defendant would eventually be denied), Defendant's new willingness to agree to the terms of a search represents a clear change in position. The parties conferral and agreed-upon search proposal after the Motion to Dismiss was denied further signifies this change in position by Defendant. In response to the Court's Minute Order requiring conferral and in clear contrast to Defendant's initial position, Defendant agreed to the terms of a search for FOIA records and then displayed a sudden acceleration in processing Plaintiff's FOIA request. *See* Dkt. 16 at 1 (JSR) ("Defendant is in the process of completing the search, pursuant to the agreement reached with Plaintiff regarding the scope of the search."). "Indeed, an agency's 'sudden acceleration' in processing a FOIA request may lead to the conclusion that the lawsuit substantially caused the agency's compliance with FOIA." *Elec. Priv. Info. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 41 (D.D.C. 2016). This litigation caused a voluntary change in Defendant's position—Defendant voluntarily agreed to a search proposal and even adopted Plaintiff's suggested search terms, and began processing the request and fulfilling its obligations under FOIA. But for the litigation, Defendant would have maintained its position that the request did not reasonably describe the records sought and therefore, would not have sought clarification on the request and agreed to a search proposal.

### 3. Defendant's Second Change in Position

Defendant's release of all responsive records demonstrates Defendant's second voluntary change in position, with a clear causal connection to Plaintiff's lawsuit. FOIA's fee-shifting provision, permits the Court to assess attorney's fees and other litigation costs against the government when the complainant has "substantially prevailed" by obtaining relief through a

voluntary change in position by the agency. *Protect the Pub.'s Tr.,* 2024 WL 663427 at *1 (citing

5 U.S.C. § 552(a)(4)(E)).

Despite the change in position to work towards agreeing on a search proposal, after

denial of its Motion to Dismiss, Defendant filed its Answer on August 16, 2023, denying that

Plaintiff was "entitled to the relief requested or to any relief whatsoever." Dkt. 14 at 6 (Answer).

Plaintiff's Complaint sought, *inter alia,* relief in the form of Defendant "conduct[ing] a

reasonable search for records . . ." and "produc[ing] all non-exempt responsive records or

portions of records." Dkt. 1 at 5 (Compl. ¶¶ i–ii); Perrin Decl. ¶ 42 [filed herein].

In clear contrast to the position Defendant put forth in its Answer, and as result of this

litigation, Defendant went on to release over 3,500 pages of records responsive to Plaintiff's

request. Dkt. 20 at 1 (JSR). The second Count in Plaintiff's Complaint was vindicated through

Defendant's voluntary release of all responsive, non-exempt records. *See* Dkt. 1 at 5 (Compl.

Count ii). Plaintiff, through litigation, compelled Defendant to "promptly produce all

non-exempt responsive records or portions of records." *Id.* Plaintiff substantially prevailed in this

case because it caused Defendant to voluntarily and unilaterally release non-exempt records

responsive to its FOIA request, and "it is clear that the suit was necessary and causally linked to

the release of the documents obtained." *Church of Scientology*, 653 F.2d at 588. Given

Defendant's initial position with respect to Plaintiff's FOIA request, but for the litigation,

Plaintiff would not have received all responsive records. Plaintiff is eligible for fees and costs.

### 4.  Defendant's Third Change in Position

The adequate search conducted by Defendant demonstrates the third voluntary change in

position by Defendant as a result of Plaintiff's litigation. "Performance of a search previously

refused by the agency . . . appears to squarely fit FOIA's definition of 'relief.'" *See Protect the*

*Pub.'s Tr.,* 2024 WL 663427 at *4. Less than two months after the parties agreed to a search proposal, Defendant reported that it had completed its search for responsive records. Dkt. 17 at 1 (JSR). On August 19, 2024, after the release of responsive records, Plaintiff advised Defendant that it was satisfied with the adequacy of Defendant's search and its withholdings. Dkt. 21 at 1 (JSR).

The United States District Court for the District of Columbia has held that a party may prevail in FOIA litigation without receiving responsive records if it causes the agency to conduct an adequate search. *See Protect the Pub.'s Tr.*, 2024 WL 663427, at *4 ("After careful consideration, the Court concludes that 'relief' is capacious enough to encompass a search not resulting in responsive records[.]"). Here, Plaintiff *did* receive responsive records—thousands of pages. However, Plaintiff also sought relief in the form of "Defendant [ ] conduct[ing] a reasonable search for records," as required under the FOIA. Dkt. 1 (Compl. at Count i). The second Count in Plaintiff's Complaint was vindicated through Defendant voluntarily conducting a reasonable search. *See* Dkt. 21 at 1 (JSR) ("Plaintiff has advised that it is satisfied with the adequacy of the agency's search."). Moreover, there is a clear causal link between the instant litigation and Defendant's conduct, representing Defendant's third voluntary change in position. Before this Court dismissed Defendant's Motion to Dismiss, the record makes clear that Defendant had no intention of searching for responsive records. *See* Minute Entry, July 13, 2023; Dkt. 9 at 2–3 (Defendant's Motion to Dismiss).

Defendant's initial position and Defendant's three voluntary and unilateral changes in position during the course of the litigation (agreeing to a search proposal, conducting an adequate search, and releasing all responsive records), demonstrate that Plaintiff has substantially prevailed in this litigation and is eligible for attorney fee and costs.

### 5.  Plaintiff's Suit was Necessary

Plaintiff has met its "burden to show that it is more likely than not that [its] litigation caused the release of documents," *Zynovieva v. U.S. Dep't of State*, No. 19-CV-3445, 2023 WL 2755599, at *7 (D.D.C. Mar. 31, 2023), *aff'd*, No. 23-5120, 2024 WL 1946592 (D.C. Cir. Apr. 30, 2024). This is not a case where Plaintiff could have received the records sought through the ordinary administrative channels. *See Short v. Army Corps of Eng'rs,* 613 F. Supp. 2d 103, 106 (D.D.C. 2009) ("The causation requirement is missing when disclosure results not from the suit but from delayed administrative processing") (internal citation omitted). Plaintiff filed this lawsuit after a significant delay, during which time Defendant offered infrequent and inconsistent assurances that it was processing Plaintiff's request. Perrin Decl. ¶¶ 34, 58 [filed herein]. Plaintiff is well aware, "[T]he mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." *Zynovieva*, 2023 WL 2755599 at *5 (quoting *Weisberg v. Dep't of Just.,* 745 F.2d 1476, 1496 (D.C. Cir. 1984)). A plaintiff must show "something more." *Zynovieva*, 2023 WL 2755599 at *6 (quoting *Cox v. U.S. Dep't of Just.*, 601 F.2d at 6). Here, Plaintiff AWHC has shown "something more," namely: (1) that the arguments put forth by Defendant in its Motion to Dismiss (Dkt. 9) and in its Reply in Support of Motion to Dismiss (Dkt. 12) suggest that the agency would have failed to comply with the request, and (2) that Plaintiff would not have achieved an adequate search and the release of all responsive records because Defendant failed to seek clarification on the request during the administrative phase.

Without this lawsuit, it can be reasonably inferred that Defendant would have stood by its position that Plaintiff's request was not reasonable as written, throughout the administrative phase of this case. Here, "[t]here is no indication in the record that [the BLM] would have actually searched [for responsive records] or released any [responsive records] in the absence of

this litigation." *Church of Scientology*, 653 F.2d at 588.

Further, although the delay in this case was significant (437 calendar days) and in clear violation of FOIA's timelines, the facts of this case stand in contrast to those cases where delay coupled with compliance by the government during litigation was insufficient to establish eligibility. *Compare Zynovieva*, 2023 WL 2755599, at *7 ("[Plaintiff's] purely temporal argument falls short"); *compare also, WP Co. LLC v. U.S. Dep't of State,* 506 F. Supp. 3d 11, 17 (D.D.C. 2020) ("it seems more likely, in fact, that the documents would have been processed in the same manner with the same results, regardless of whether litigation was filed.") (internal quotation marks omitted). Here, by contrast, Plaintiff caused Defendant to comply with its FOIA obligations. After stating it was reviewing records and would issue a determination throughout the administrative process, Defendant never sought clarification on the request, released any records to Plaintiff, or issued a determination. Plaintiff filed its Complaint, and Defendant took a clear position that the request did not reasonably describe the records sought, so it was not obligated to search for, process, or release any responsive records sought by the request.

In its Reply in Support of Motion to Dismiss, Defendant stated: "[Plaintiff] argues that because [Defendant] attempted to process its request, the request must have reasonably described the records it sought." Dkt. 12 at 4 (Defendant's Reply in Support of Motion to Dismiss) (citing Dkt. 10 at 10 (Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss)). Defendant went on to argue that "an agency can attempt to respond to a request even if it fails to reasonably describe the records it sought," and "if [Defendant's] effort to locate responsive records suggests that [Plaintiff's] request reasonably described the records sought, then by the same logic, [Defendant's] failure to produce any records seemingly would suggest the opposite." Dkt. 12 at 4 (Defendant's Reply in Support of Motion to Dismiss).

Defendant further argued that "the [ ] request is so ambiguous that even a liberal construction cannot enable a reasonable FOIA processor to understand it." *Id.* at 5. Defendant also asserted, "the fact that [Defendant] did not seek clarification is harmless" and that "clarification would be futile." *Id.* at 7. Defendant concluded its arguments by asserting that Plaintiff could "simply submit a new, clear request for records." *Id.* at 8.

The record demonstrates that Defendant was interested in dismissing that case, rather than clarifying and appropriately processing Plaintiff's request in accordance with the FOIA. If Defendant had its way, Plaintiff would have had to submit an entirely new request. Further, Defendant's statements indicate that although the agency was processing the request in some fashion, absent litigation Plaintiff would not have had the opportunity to agree to a search proposal with Defendant, which incorporated Plaintiff's suggested search terms.

Defendant likewise cannot point to its attempt to agree to a search proposal while its Motion to Dismiss was pending to argue that the same result could have been achieved absent litigation. During the administrative phase, Defendant never asked for clarification on the request. Only after new counsel for Defendant took over, and four months after the Motion to Dismiss had been pending before the Court, did Defendant attempt to seek clarification on the request. Plaintiff's voluntary attempt to agree to a search proposal was doubtless prompted by the realization of an impending denial on its Motion to Dismiss (Dkt. 9), attributable to the facts and arguments brought forth by Plaintiff in opposition to the Motion. Dkt. 10 (Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss).

Nor would Defendant have conducted an adequate search and released all responsive records absent litigation. Only after the Court rejected Defendant's arguments related to the request's clarity did Defendant actually search for, process, and release responsive records to

Plaintiff—demonstrating a "'sudden acceleration" in processing Plaintiff's request, "lead[ing] to the conclusion that the lawsuit substantially caused the agency's compliance with FOIA." *Elec. Priv. Info. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 41 (D.D.C. 2016).

Plaintiff's litigation caused Defendant to change its position and comply with its FOIA obligations, including conducting an adequate search and releasing all responsive records to Plaintiff. Plaintiff is eligible for reasonable attorney fees and costs.

### D.  Plaintiff is Entitled to an Award of Fees and Costs

After a court determines that a claimant is eligible to receive attorney fees, it must then analyze whether the claimant is also "entitled" to such fees. *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 232 (D.D.C. 2011). On the question of a plaintiff's entitlement, "the court should consider [four factors] in determining the appropriateness of an award of costs and attorney fees." *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365 (D.C. Cir. 1977). The four factors are: 1) the benefit to the public; 2) the commercial benefit of the complainant; 3) the nature of the complainant's interest in the records sought; and, 4) "whether the government's withholding of the records sought had a reasonable basis in law." *Id.* at 1364. No one of these factors is dispositive. *Piper v. U.S. Dep't of Just.*, 339 F. Supp. 2d 13, 20 (D.D.C. 2004). Entitlement "is at the discretion of the district court." *Md. Dep't of Hum. Res. v. Sullivan*, 738 F. Supp. 555, 563 (D.D.C. 1990). Here, the factors weigh in favor of finding that Plaintiff is entitled to attorney fees.

### 1.  Factor One: Benefit to the Public

Plaintiff's work has significant benefit to the public. The public benefit factor "requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought." *Davy*, 550 F.3d at 1159. "To have potential public value,

the request must have at least a modest probability of generating useful new information about a matter of public concern." *Morley v. Cent. Intel. Agency*, 810 F.3d 841, 844 (D.C. Cir. 2016). A plaintiff obtaining records "speaks for an award [of attorney fees] when the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 115, 1120 (D.C. Cir. 1995) (quoting *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979). Additionally, case law requires consideration of degree of dissemination and likely public impact as pertinent considerations in the public benefit analysis. *Nw. Coal. for Alts. to Pesticides v. Browner*, 965 F. Supp. 59, 64 (D.D.C. 1997).

Here, Plaintiff sought numerous categories of records related to communications and records generated between James Galloway or Jimmy Galloway and all Public Affairs staff, all Wild Horse and Burro Specialists, and all Field Managers under the jurisdiction of Defendant's Oklahoma Field Office. Perrin Decl. ¶ 18 [filed herein]; Dkt. 1-5 at 3 (Compl. Ex. 1).

Defendant ultimately released over 3,500 pages of records responsive to this request. Dkt. 20 at 1 (JSR). These records were sought as part of Plaintiff's investigatory work. Perrin Decl. ¶ 12 [filed herein]. "The goal of AWHC's Investigation Program is to expose abuse, fraud, and waste within federal programs affecting wild horses and burros, and to promote accountability, humane treatment, and sustainable stewardship of wild horses and burros by the agencies and entities charged with their management." *Id.* ¶ 7. Obtaining records through Freedom of Information Act ("FOIA") requests is "critical to AWHC's investigative work." *Id.* ¶ 8. Moreover, it is clear that the public "remain[s] highly interested in the protection and preservation of wild horses and burros." *Id.* ¶ 9. Plaintiff has nearly 900,000 followers across its various communication platforms and uses information obtained through its FOIA practice to inform the public about federally managed wild horses and burros. *Id.*

The records sought in this case were a part of Plaintiff's investigation into the Defendant's Adoption Incentive Program, "a program that pays individuals $1,000 to adopt a wild, unhandled horse or burro." *Id*. ¶ 12. "The program allows individuals to adopt up to four animals per year and there is no limit on the number of years an individual can participate in the program." *Id.* Plaintiff's investigation has shown "that adopters are abusing the Adoption Incentive Program by pocketing the $1,000 and selling their horse or burro at kill pens," resulting in "thousands of wild horses and burros ending up in the slaughter pipeline." *Id.* The Adoption Incentive Program is a matter of great public significance, "and has been written about by such publishers as the New York Times." *Id*. ¶ 13.

Through Plaintiff's extensive and ongoing investigation into the Adoption Incentive Program, Plaintiff learned the identity of BLM employee James or Jimmy Galloway. *Id*. ¶ 14. Plaintiff learned "that Mr. Galloway's role involves the Wild Horse and Burro Program and off-range adoption compliance, including compliance inspections, repossession of horses found at slaughter auctions or unlawfully sold, abuse cases, and general compliance to ensure adopters are treating horses in accordance with humane standards and BLM regulations." *Id.* Through its investigation into the Adoption Incentive Program, Plaintiff became especially concerned with "issues identified within the New Mexico State Office and the Oklahoma Field Office, related to Adoption Incentive Program animals ending up in slaughter auctions, also known as kill pens." *Id*. ¶ 15. Plaintiff made this request specifically to learn more about the Defendant's "knowledge and oversight of horses ending up in slaughter auctions," something which the Defendant has "adamantly denied publicly for years and has stated there is no credible evidence of horses ending up in slaughter." *Id*. ¶ 16.

Plaintiff posts many FOIA records obtained publicly on its website at

https://americanwildhorse.org/resources. *Id.* ¶ 11. Some of the records obtained through this litigation were posted at this URL under the subject "Freedom of Information Act Records" at the link titled "BLM Communications With Kill Pens. " *Id.* The records obtained as a result of this litigation "shed light" on Defendant's "activities with respect to wild horses and burros that it is tasked with protecting." *Id.* ¶ 66. These records demonstrate, among other things, that Mr. Galloway—a BLM employee—has "first-hand knowledge of, and has acknowledged, horses ending up in slaughter auctions." *Id.* The responsive records also demonstrate "how easy it is for horses within the adoption programs to get lost within the system," and "shine a light on the need for transparency within adoption programs," which is what Plaintiff's investigation program aims to do. *Id.* ¶¶ 67–68.

Plaintiff has posted some of the most "revealing records" released as a result of this judicial review on its website. Further, "AWHC is in the process of continuing to review the records and intends to post most, if not all, of the thousands of records it has received on its website, to share them with the public." *Id.* ¶ 69. "The most revealing aspects of the records that have already been shared with the public include, proof of two-way communication between a known slaughter exporter, David O'Dwyer and BLM employee James or Jimmy Galloway." *Id.* ¶ 70. The records posted on Plaintiff's website also show "that BLM employee James or Jimmy Galloway was aware of horses being purchased at slaughter auctions," and that Defendant's employee James or Jimmy Galloway "has communicated with Pat Williams, the State Director for the New Mexico State Office, demonstrating his communication with state leadership level employees within the BLM about potentially slaughter bound horses." *Id.*

By sharing records obtained in this litigation Plaintiff has added to the public's information and understanding with respect to Defendant's communications with kill pens. *Id.* ¶

71. These records are vital to Plaintiff's independent oversight of Defendant and Plaintiff's ongoing investigation into the Adoption Incentive Program and the Defendant's responsibilities with respect to wild horse and burro management. *Id*. ¶ 72. The use and value of these records to the public, who deeply care about the welfare of horses and burros, extends far beyond Plaintiff's immediate use of the records. Plaintiff's 2017 national poll showed that "over 80% of the individuals polled oppose the slaughter of wild horses and have a vested interest in the Defendant's activities related to these horses." *Id*. ¶ 73.

In addition to sharing these records with the public, Plaintiff will continue to use these records to "inform ongoing investigations into the BLM, to work with media to raise awareness of these issues, and for future reports and presentations to media, the public, and Congress, all on behalf of wild horses and burros and the American public." *Id*. ¶ 74. The responsive records plainly demonstrate that Defendant is "aware of horses ending up in kill pens," an issue which Plaintiff asserts Defendant currently has "no strategy to combat." *Id*. ¶ 75.

## 2.  Factor Two: Commercial Benefit of Complainant

The second factor weighs in favor of granting attorney fees to Plaintiff. An award of attorney fees is appropriate when the Plaintiff will not derive an economic benefit from the release of the requested records. *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 235 (D.D.C. 2011). When considered in conjunction with the third factor, courts "assess whether a plaintiff has 'sufficient private incentive to seek disclosure' without attorney's fees." *Davy*, 550 F.3d at 1160 (quoting *Tax Analysts*, 965 F.2d at 1095). This request was not made for commercial reasons. Plaintiff derived no economic benefit from obtaining the records requested. Perrin Decl. ¶ 8 [filed herein] ("AWHC does not derive any commercial benefit from its acquisition of records."). The second factor weighs in favor of Plaintiff.

### 3.  Factor Three: Nature of Complainant's Interest in the Records Sought

The third factor considers the nature of the plaintiff's interest in the records. The second and third factors, commercial benefit and the plaintiff's interest in the records, "are closely related and often considered together." *Nat'l Sec. Archive v. U.S. Dep't of Def.*, 530 F. Supp. 2d 198, 201 (D.D.C. 2008). Plaintiff is a nonprofit organization dedicated to preserving wild horses and burros in free-roaming herds for generations to come. *See* Perrin Decl. ¶ 3 [filed herein]. "AWHC works to uphold the highest standards of The Wild Free-Roaming Horses and Burros Act of 1971 by advocating for the freedom of wild horses and burros, humane population management, and raising wild horse and burro welfare standards." *Id*. ¶ 5. Accordingly, Plaintiff conducts independent investigations concerning Defendant's responsibilities and activities with respect to wild horse and burro management. *Id*. ¶ 72.

Plaintiff made this request specifically to learn more about Defendant's knowledge and oversight of horses ending up in slaughter auctions, something which the Defendant has adamantly denied publicly for years, including statements that there is no credible evidence of horses ending up in slaughter. *Id*. ¶ 16.

These records are vital to Plaintiff's independent oversight of Defendant and Plaintiff's ongoing investigation into the Adoption Incentive Program and the Defendant's responsibilities with respect to wild horse and burro management. *Id*. ¶ 72. "Plaintiff will continue to use these records to inform ongoing investigations into Defendant, to work with media to raise awareness of these issues, and for future reports and presentations to media, the public, and Congress, all on behalf of wild horses and burros and the American public." *Id*. ¶ 74.

### 4.  Factor Four: Whether the Government's Withholding of the Records Sought had Reasonable Basis in Law

"The fourth factor . . . considers whether the agency's position 'had a reasonable basis in

law,' *Tax Analysts*, 965 F.2d at 1096. It "requires consideration of 'whether the agency's opposition to disclosure had a reasonable basis in law,' and whether the agency 'had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" *Citizens for Resp. & Ethics in Wash.*, 820 F. Supp. 2d at 47 (quoting *Davy*, 550 F.3d at 1162). It is the agency's burden to show that it had a "colorable" or "reasonable basis" for "not disclosing the material until after [the plaintiff] filed suit." *Davy*, 550 F.3d at 1163. When the agency had a reasonable basis in law for concluding that the information at issue was exempt, this goes against a plaintiff's entitlement to fees. *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 45–46 (D.D.C. 2016) ("The question is not whether [the Plaintiff] has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [the Plaintiff] filed suit.") (quoting *Davy*, 550 F.3d at 1162).

In conducting its reasonableness analysis, the Court "should always keep in mind the basic policy of the FOIA to encourage the maximum feasible public access to government information and the fundamental purpose of section 552(a)(4)(E) to facilitate citizen access to the courts to vindicate their statutory rights." *Nationwide Bldg. Maint.*, 559 F.2d at 715; *Story of Stuff Project v. U.S. Forest Serv.*, No. 17-cv-00098-APM, 2022 WL 1521843, at *1 (D.D.C. May 13, 2022). FOIA "mandates the disclosure of documents held by a federal agency unless the documents fall within one of nine enumerated exemptions." *U.S. Fish & Wildlife Serv.*, 592 U.S. at 263.

Defendant has not shown any colorable or reasonable basis for not disclosing the responsive records until after Plaintiff had filed its suit and successfully defended against a motion to dismiss. Defendant's delay was not reasonable, nor was its position that the request

failed to reasonably describe the records sought. Factor four weighs in favor of Plaintiff.

(a)  <u>Defendant's Delay was Not Reasonable</u>

Defendant's delay during the administrative phase of this case was not reasonable. *See Perrin Decl.* ¶ 34 [filed herein]. Agencies do not get to pick and choose when they will provide a determination—they must follow the law. These deadlines are set by Congress, and the Supreme Court has shown support for following Congressional decisions and deadlines. *See Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 630 (2007)*.* In this case, Defendant did not issue a determination on Plaintiff's request within twenty working days, as mandated by Congress in the FOIA. *See* 5 U.S.C. § 552 (a)(6)(A)(i). Plaintiff did not file its Complaint until fourteen months after its FOIA request was submitted and acknowledged by Defendant. Defendant's delay and resulting failure to disclose the responsive records until after Plaintiff had filed its suit was not reasonable.

(b)  <u>Defendant's Position, that Plaintiff's Request Failed to Reasonably<br>Describe the Records it Sought, was Not Reasonable</u>

Defendant had no reasonable basis in the law to assert that Plaintiff's request "failed to reasonably describe the records sought." The text of the FOIA requires that a request "reasonably describe" the records sought. 5 U.S.C. § 552(a)(3)(A). "The linchpin inquiry is whether the agency is able to determine 'precisely what records [are] being requested.'" *Yeager v. Drug Enf't Admin.*, 678 F.2d 315, 326 (D.C. Cir. 1982) (quoting legislative history). The D.C. Circuit has held that even if the request "is not a model of clarity," an agency should carefully consider the nature of each request and give a reasonable interpretation to its terms and overall content. *See LaCedra v. Exec. Off. for U.S. Att'ys*, 317 F.3d 345, 347–48 (D.C. Cir. 2003). An agency must also "construe a FOIA request liberally." *Id.* (citing *Nation Mag. v. U.S. Customs Service*, 71 F.3d 885, 890 (1995)).

After litigation commenced, the first attorney assigned to represent Defendant moved to dismiss Plaintiff's Complaint with prejudice. Defendant's position was that Plaintiff had submitted a "confusingly drafted request, plagued with multiple overlapping layers of ambiguity," and that the request "[did] not enable [Defendant] to ascertain precisely which records [Plaintiff] seeks." Dkt. 9 at 1 (Defendant's Motion to Dismiss). Defendant further argued, "even liberally construed, [Plaintiff's] FOIA request failed to reasonably describe the records it sought, for at least seven different reasons." *Id*. at 3. In its Reply in Support of Motion to Dismiss, Defendant further asserted, "[Plaintiff] attempts to defend the adequacy of its request, but none of its arguments have merit." Dkt. 12 at 1 (Defendant's Reply in Support of Motion to Dismiss). When new counsel for Defendant was brought on to the case, and under the threat of the inevitable denial of a Motion to Dismiss, Defendant sought—at the 11th hour—to voluntarily negotiate the terms of a search with Plaintiff. *See* Perrin Decl. ¶ 44 [filed herein]; Sorenson Decl. ¶ 29 [filed herein]. This change in behavior demonstrates Defendant's own realization that its position in the Motion to Dismiss was unreasonable, namely its flawed assertion that the request did not reasonably describe the records sought and therefore, that it was not required to process the request, search for, or release responsive records.

The hearing held on Defendant's Motion to Dismiss further suggests that Defendant's position during the administrative phase and at the start of the litigation was not reasonable:

> THE COURT: . . .We're here on the defendant's motion to dismiss, which raises only one argument. The argument, essentially, is that the plaintiff's request it's too confusing to call for an answer or a response.
> Let me start by stating how I could read the request and how I read it and see if the parties agree or disagree with my reading of it. I recognize that it is not a picture of clarity, but I think I understand what it's requesting. If that's not right, then you can suggest that it is not sufficient.
> But as I read it, it is asking for all, essentially, communications or records of communications between -- through employees of the Bureau of Land Management who were in the Oklahoma Field Office; and those employees are

the public affairs staff, the wild and burro specialists and the field managers. It's requesting the communications of those folks who are employed in the Bureau of Land Management in the Oklahoma Field Office.

　　　　And the request is further narrowed by saying those communications that involve James Galloway, also known as Jimmy Galloway.

　　　　So the question for you, Mr. Sorenson, is am I reading it correctly?

MR. SORENSON: That's a fair reading, yes.

THE COURT: Mr. Berhane, if I'm able to read it correctly like that, why is it a problem for the Bureau of Land Management? Isn't it sufficiently clear? I mean, I just picked it up; I have no expertise. I read it, and that seems to be what it says.

Dkt. 18 (Motion Hearing Transcript 2:15–25 and 3:1–18, July 13, 2023).

This Court rejected Defendant's position, denied Defendant's Motion to Dismiss and instructed the parties to proceed based on the interpretation of the FOIA request determined at the hearing. Minute Entry, July 13, 2023; Dkt. 18 (Motion Hearing Transcript 3:1–13, July 13, 2023).

At the start of this litigation, Defendant, rather than complying with its FOIA obligations, claimed Plaintiff's Complaint did not reasonably describe the records sought, so it determined it was not necessary to "guess blindly" at the records Plaintiff sought, and was not mandated to search for, process, and release responsive records. *See* Dkt. 9 at 7–9 (Motion to Dismiss). Defendant did not have a reasonable basis for withholding responsive records, and instead, it sought to justify its own failures by construing as much ambiguity into the request as possible, thereby causing the present litigation to extend an additional ten months through motion practice. Defendant here was "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" *Citizens for Resp. & Ethics in Wash.*, 820 F. Supp. 2d at 47 (quoting *Davy*, 550 F.3d at 1162). Defendant did not have a reasonable basis in law to withhold the responsive records from Plaintiff.

(c)  Defendant's Failure to Seek Clarification on the Request During the
Administrative Phase was Not Reasonable

Defendant's failure to reach out to Plaintiff during the administrative phase, for

clarification on the request further demonstrates that it had no "colorable" or "reasonable basis"

for "not disclosing the material until after [the plaintiff] filed suit." *Davy*, 550 F.3d at 1163.

Where necessary, and in order to comply with its obligations under the FOIA, agencies

should reach out to requesters for clarification on requests, especially when doing so is required

by that agency's regulations. *See Hall & Assocs. v. U.S. Env. Prot. Agency*, 83 F. Supp. 3d 92,

102 (D.D.C 2015) (citing 40 C.F.R. § 2.102(c) and explaining that the EPA "failed to engage in

the required collaborative process" where the EPA did not give requester an opportunity to

discuss the request despite its regulations stating that if the EPA determines a request does not

reasonably describe the records, it will tell the requester what additional information is needed or

why the request is otherwise insufficient.); *see also, Parker v. U.S. Dep't of Just. Exec. Off. for

U.S. Atty's,* 852 F. Supp. 2d 1, 14 (D.D.C. 2012) ("DOJ must inform the requester why the

request was unclear and allow the requester to modify their request. DOJ did not comply with

this regulation here.") (citation omitted); *see also Ruotolo v. Dep't of Justice, Tax Div.*, 53 F.3d 4,

10 (2d Cir. 1995) (Tax Division had duty to assist plaintiffs in reformulating their request and

could not resist disclosure because the request fails reasonably [to] describe records unless it has

first 3 made a good faith attempt to assist the requester in satisfying that requirement.) (citations

omitted).

Here, Defendant failed to follow the procedures required by regulation. The Department

of the Interior regulations states, in relevant part, "If the bureau determines that your request

does not reasonably describe the records sought, the bureau will inform you what additional

information you need to provide in order to reasonably describe the records that you seek so the

requested records can be located with a reasonable amount of effort." 43 C.F.R. § 2.5(d). The

BLM's own FOIA guidelines state, "If your request does not reasonably describe the records

sought, we will inform you what additional information is needed." Bureau of Land

Management, *Make a Freedom of Information Act (FOIA) Request,*

https://www.blm.gov/about/foia/submit-a-foia-request (last visited Dec. 12, 2024).

Defendant's position that the request "failed to reasonably describe the records sought"

was itself unreasonable. However, if that was Defendant's position, then it should have informed

Plaintiff during the administrative phase, "what additional information [Plaintiff] need[ed] to

provide in order to reasonably describe the records [sought] so the requested records [could] be

located with a reasonable amount of effort." 43 C.F.R. § 2.5(d). Instead, Defendant's failure to

comply with its regulations and seek clarification, and its failure to subsequently search for and

release all responsive records had no reasonable basis in law. The fourth factor weighs in favor

of Plaintiff. Since all four factors weigh in favor of Plaintiff, Plaintiff has demonstrated its

entitlement to an award of attorney fees and costs.

### E.  Plaintiff's Fee Request is Reasonable

Even if a plaintiff is eligible and entitled to attorney fees, the Court must still "analyze

whether the amount of the fee request is reasonable." *Elec. Priv. Info. Ctr.*, 811 F. Supp. 2d at

237. To achieve a reasonable attorney fee amount, one usually multiplies "the hours reasonably

expended in the litigation by a reasonable hourly fee, producing a 'lodestar' amount." *Jud.*

*Watch, Inc. v. U.S. Dep't of Just.*, 774 F. Supp. 2d 225, 232 (D.D.C. 2011). Plaintiff has charged

reasonable rates, and all time spent on this case was necessary and reasonably incurred. *See*

Sorenson Decl. ¶¶ 12, 22 [filed herein]; Declaration of Gianina Josephine Spano ("Spano Decl.")

¶ 10 [filed herein]; Declaration of Thomas Herbert Housel ("Housel Decl.") ¶ 9 [filed herein].

### 1. Plaintiff Has Charged Reasonable Rates

Plaintiff has charged reasonable rates. In billing for this case, Plaintiff used rates as indicated by the Fitzpatrick Matrix. Defendant has agreed to using the Fitzpatrick Matrix for Plaintiff's rates. Sorenson Decl. ¶ 19 [filed herein]. The Fitzpatrick Matrix is attached to the Sorenson Declaration as Exhibit 103. The Fitzpatrick Matrix was released by the United States Attorney for the District of Columbia. Sorenson Decl. ¶ 22 [filed herein]. The Fitzpatrick Matrix has been developed to provide a reliable assessment of fees charged for complex federal litigation in the District of Columbia. *See* Explanatory Note 1, Ex. 103 [filed herein]. The Fitzpatrick Matrix uses years of experience practicing law as a factor in the rate computation of a reasonable fee. Former Chief Judge of the U.S. District Court for the District of Columbia, Beryl A. Howell, ordered the use of the Fitzpatrick Matrix in calculating the plaintiff's attorney fees. *J.T. v. District of Columbia*, 652 F. Supp. 3d 11, 36 (2023) (D.D.C. 2023). The rates and years used for each member of Plaintiff's legal team are described in the attached Sorenson Declaration. Sorenson Decl. ¶¶ 11, 22–23 [filed herein].

Three rates and three specific years, 2022, 2023, and 2024 are being used in this case from the Fitzpatrick Matrix. *Id.* ¶¶ 22–23. Plaintiff used the 2022, 2023, and 2024 rates for Plaintiff's Attorney of Record, Mr. C. Peter Sorenson, at $684 for 2022 (19 years of experience), $735 per hour for 2023 (20 years of experience), and $795 per hour for 2024 (21 years of experience). *Id.* ¶ 22. Plaintiff used the 2023 and 2024 rates for Associate Attorney, Ms. Gianina Spano, at $467 per hour for 2023 (0 years experience) and $519 per hour for 2024 (1 year of experience). *Id.* ¶ 23. Plaintiff used the 2024 rates for Associate Attorney, Mr. Thomas Housel, at $538 per hour for 2024 (2 years of experience). *Id.* Likewise, the hourly rate for all Law Clerks and Paralegals is $207 for 2022, $220 per hour for 2023, and $236 per hour for 2024. *Id.*

## 2.  Plaintiff Spent a Reasonable Number of Hours

"[L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir 2008). "When the Government seeks to rebut . . . hours billed, it must provide—just as plaintiff must provide specific evidence in his application for attorney's fees—'equally specific countervailing evidence.'" *Piper*, 339 F. Supp. 2d at 24 (internal citations omitted). Here, a reasonable number of hours has been expended by Sorenson Law LLC. *See* Sorenson Decl. ¶¶ 12 [filed herein]; Spano Decl. ¶ 10 [filed herein]; Housel Decl. ¶ 9 [filed herein].

Fees have been broken down into phases based on the major events occurring in the litigation. The Merits Phase, labeled as "Judicial Review" in Plaintiff's MyCase Billing and Time Records found at Exhibit 105 spans from September 16, 2022, to August 26, 2024, reflects the necessary time spent on the merits of the case. Sorenson Decl. ¶ 13 [filed herein]. This phase includes the time spent preparing and filing the Complaint, successfully defending against the Motion to Dismiss (Dkt. 9), conferrals between the parties, and the successful effort to agree to the terms of the search, to achieve an adequate search, and to secure the release of all responsive records. *See id.* ¶¶ 27–32. This phase also includes other activities, such as work performed related to preparing Joint Status Reports. *Id.* ¶ 32. The Settlement Phase, from August 27, 2024, to October 20, 2024, reflects the necessary time spent attempting settlement of attorney fees. *Id.* ¶¶ 13, 33. The Fee Motion Phase from October 21, 2024, to December 15, 2024, reflects the necessary time spent on the present Motion for Attorney Fees and Costs. *Id.* ¶¶ 13, 33. *See* also Ex. 106, Summary of Work By Major Phase and Litigation Costs [filed herein].

Additionally, billing discretion was exercised. *See* Sorenson Decl. ¶¶ 6, 9, 25–26, 34 [filed herein]. Specifically, in its attorney fee calculations Plaintiff is not including numerous

time entries that could be fairly described as clerical or administrative tasks. *Id.* ¶ 34; Ex. 105 at

14–19 [filed herein]. Plaintiff is not including time entries related to its preparation and filing of

an Errata to the Complaint.  Sorenson Decl. ¶ 34 [filed herein]; Ex. 105 at 15 [filed herein]. Nor

is Plaintiff including time entries where Associate Attorney, Thomas Housel, was initially

drafting this Memorandum in Support. Sorenson Decl. ¶ 34 [filed herein]; Ex. 105 at 18–19

[filed herein]. Those entries were changed to "Non-billable Time Entries" since Associate

Attorney, Gianina Spano, later took over the primary drafting and research efforts. Sorenson

Decl. ¶ 34 [filed herein]. "[N]umerous other time entries throughout the life of this case were

also deducted in keeping with billing judgment."*Id.*; Ex. 105 at 14–19 [filed herein]. Plaintiff has

further reduced its total billable fees and costs by 5% as a part of its billing discretion. Sorenson

Decl. ¶ 36 [filed herein]; Ex. 106 [filed herein].

### 3.   Other Costs Incurred were Reasonable

In addition to allowing the recovery of reasonable attorney fees, the FOIA fee provision

authorizes the Court to award a prevailing plaintiff any "other litigation costs reasonably incurred

. . ." 5 U.S.C. § 552(a)(4)(E). Plaintiff incurred reasonable costs for the filing fee in the amount

of $402 (Ex. 101 [filed herein]), and certified mailing fees for service on Defendant in the

amount of $28.23. Ex. 102 [filed herein]. Plaintiff incurred a total of $430.23 for these costs.

### 4.   Plaintiff Can Recover Attorney Fees for Reasonable Time Spent on Settlement

The District Court has previously ruled that reasonable time spent on settlement is

recoverable. *See Elec. Priv. Info. Ctr. v. Fed. Bureau of Investigation*, 80 F. Supp. 3d 149, 162

(D.D.C. 2015) ("The Court does find it generally appropriate to award EPIC for its work

attempting to settle the attorney's fee matter. . . ."). Courts encourage parties "to resolve their

differences without motions." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 197 F. Supp.

3d 290, 297 (D.D.C. 2016); *Coffey v. U.S. Bureau of Land Mgmt.*, 316 F. Supp. 3d 168, 172

(D.D.C. 2018). It is also well-settled that reasonable time and expenses spent preparing a fee

petition are compensable. *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 696 F.3d 1, 6

(D.C. Cir. 2012); *see generally, Comm'r, Immigr. & Naturalization Serv. v. Jean*, 496 U.S. 154

(1990). These awards are not a "windfall." Concerning an award for "fees on fees," the District

Court has observed that if "upon close scrutiny of the record, that the hours spent by the plaintiff

on these tasks were reasonably expended and do not constitute a 'windfall' for the attorney, the

court will award 'fees on fees.'" *Elec. Priv. Info. Ctr.*, 811 F. Supp. 2d at 240 (internal citation

omitted).

## IV.    CONCLUSION

Plaintiff substantially prevailed in this litigation, and having demonstrated that all four

factors for entitlement weigh in Plaintiff's favor, is both eligible and entitled to reasonable

attorney fees and litigation costs under 5 U.S.C. § 552(a)(4)(E). Based on the above, Plaintiff

respectfully requests that this Court award attorney fees and costs in the total amount of

$55,727.79.

Plaintiff here has filed this extensive documentation justifying the fees and litigation

costs it seeks. Plaintiff's counsel undertook this litigation on a contingent fee basis. Sorenson

Decl. ¶ 1 [filed herein]. Plaintiff's fees and costs are reasonable. "By and large, the court should

defer to the winning lawyer's professional judgment as to how much time he was required to

spend on a case; after all, he won, and might not have, had he been more of a slacker." *Moreno*,

534 F.3d at 1112. Plaintiff respectfully requests the Court recognize the value of meritorious

FOIA litigation. The Court of Appeals for the District of Columbia Circuit has added its view,

stating that "the government cannot litigate tenaciously and then be heard to complain about the

time necessarily spent by the plaintiff in response." *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (en banc).

For the foregoing reasons, with the reductions of time and reductions of rates shown, Plaintiff respectfully requests that the Court order Defendant to pay the total attorney fees incurred during the Merits Phase in the amount of $28,794.20, for fees incurred during the Settlement Phase in the amount of $7,831.60, for fees relating to the preparation of this Motion and its attachments in the amount of $21,604.80, and for other litigation costs reasonably incurred in the amount of $430.23. After a 5% reduction, Plaintiff respectfully requests that the Court order Defendant to pay the total attorney fees and costs incurred in the amount of $55,727.79.

Dated this 18th day of December, 2024.

/s/ C. Peter Sorenson
C. Peter Sorenson, DC Bar #438089
Sorenson Law LLC
PO Box 10836
Eugene, OR 97440
(541) 606-9173
peter@sorensonfoialaw.com

*Attorney for Plaintiff*