# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AMERICAN WILD HORSE CAMPAIGN,

*Plaintiff*,

v.

BUREAU OF LAND MANAGEMENT,

*Defendant*.

No. 22-cv-2972-RDM-MAU

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff American Wild Horse Campaign's Motion for Attorneys' Fees and Costs ("Motion"). ECF No. 23. Plaintiff seeks to recover the fees it incurred litigating this Freedom of Information Act ("FOIA") case against the Bureau of Land Management ("Bureau"). Although Plaintiff has established it is both eligible for and entitled to fees, the fee award Plaintiff seeks is unreasonable. For the reasons set forth below, the Court recommends that Plaintiff's Motion be **GRANTED IN PART** and **DENIED IN PART**, and that the District Court award Plaintiff **$58,741.78** in fees and costs.

## FACTUAL BACKGROUND

Plaintiff is a nonprofit organization dedicated to preserving wild horses and burros through litigation, legislation, and public-facing advocacy. ECF No. 1 ¶ 2; Decl. of Amelia Martine Perrin, ECF No. 23-3 ¶¶ 3, 6 ("Perrin Decl."). Plaintiff's mission is to "expose abuse, fraud, and waste within federal programs affecting wild horses and burros." Perrin Decl. ¶ 7. Plaintiff has been investigating the Bureau's Adoption Incentive Program ("Program"), which pays individuals to adopt wild horses or burros. *Id.* ¶ 12. Through its investigation, Plaintiff learned that adopters

1

were unlawfully selling the animals in slaughter auctions.  *Id.* ¶¶ 12, 15.  Plaintiff also identified a relevant Bureau employee named James or Jimmy Galloway ("Galloway"), who oversees compliance with the Program.  *Id.* ¶ 14.

On July 22, 2021, Plaintiff submitted a FOIA request to the Bureau.  *See id.* ¶ 17 (citing ECF No. 1-5 at 2–8).[1]  In its request, Plaintiff sought records about whether the Bureau was aware of abuse within the Program:

> [E]lectronic copy of all emails, faxes, letters, memoranda, proposals, reports, contracts, notes, telephone conversations (including text messages), and any other records generated between all Public Affairs staff, all Wild Horse and Burro Specialists, and all Field Managers under the jurisdiction of the Bureau of Land Management's ("BLM") Oklahoma Field Office with James Galloway or Jimmy Galloway.  The time frame for this request is January 1, 2020 and the date that this FOIA request is processed.

*Id.* ¶ 18 (quoting ECF No. 1-5 at 3); *see also id.* ¶¶ 16–18.  The Bureau acknowledged receipt that same day.  *Id.* ¶ 20 (citing ECF No. 1-6 at 2).  In three separate emails throughout 2021, Plaintiff requested that the Bureau provide an estimated completion date for the production.  *Id.* ¶¶ 21–23 (citing ECF Nos. 1-7 at 2; 1-8 at 2; 1-9 at 2).  The Bureau did not respond until January 4, 2022, at which time it replied that it would send an update within a week.  *Id.* ¶ 24 (citing ECF No. 1-10 at 2).  On January 10, the Bureau stated that it was reviewing the records, and that it would likely respond the following week.  *See id.* ¶ 25 (citing ECF No. 1-11 at 2–3).  The Bureau did not, however, send another update until July 2022, nearly a year after the initial FOIA request.  *See id.* ¶ 32 (citing ECF No. 1-17 at 2).

Between the Bureau's responses in January and July 2022, Plaintiff sent five follow-up emails.  *See id.* ¶¶ 27–31.  In the Bureau's July response, FOIA officer Bernadette Read stated she would begin reviewing the records soon.  *See id.* ¶ 32 (citing ECF No. 1-17 at 2).  Months passed

---

[1]    Citations are to the page numbers in the ECF headers.

with no further communication. On September 15, 2022, Plaintiff sent its final request for an update before it filed this lawsuit. *See id.* ¶ 33 (citing ECF No. 1-18 at 2).

## PROCEDURAL HISTORY

Plaintiff filed suit on October 2, 2022. *See* ECF No. 1. As of that date, the Bureau had neither issued a determination on the request nor released any records. *See* Perrin Decl. ¶ 38. In its Complaint, Plaintiff requested that the Bureau conduct a reasonable search and promptly produce all non-exempt responsive records. ECF No. 1 ¶¶ i–ii. On October 18, the Bureau released ninety-seven pages of records. Decl. of Bernadette M. Read ¶ 14, ECF No. 25-9 ("Read Decl."). Read attested that she was unaware of the lawsuit until after she released the records. *Id.* ¶ 15.

On November 15, 2022, the Bureau moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 9 at 1. The Bureau argued that Plaintiff had failed "to reasonably describe the records sought" in its FOIA request. *Id.* at 2. The Bureau did not mention its initial production. On April 13, 2023, while the motion was still pending, Isaac Berhane, (counsel for the Bureau) emailed Peter Sorenson (counsel for Plaintiff) to negotiate search terms. *See* ECF No. 25-1 at 2. Sorenson responded a few days later with a counterproposal. *See* ECF No. 25-3 at 2–4. Berhane then replied that he would discuss Plaintiff's proposed search with the Bureau and keep Plaintiff posted. *See id.* at 2. Two months later, Berhane emailed Sorenson that, "We were not able to withdraw our motion since your client, as far as I understood from the below e-mail, was not willing to negotiate the terms of an adequate search." *Id.* Counsel ceased communicating about the issue when the Court scheduled a hearing on the Bureau's motion. *See* ECF Nos. 23-14 at 11; 25 at 10.

The Court denied the Bureau's motion on July 13, 2023.  Min. Entry (July 13, 2023).  In so doing, the Court held that Plaintiff's FOIA request was sufficiently clear.  *See* Tr. of Mot. Hr'g, 2:16–3:19, ECF No. 18.  Following the ruling, the Bureau filed its Answer, in which it stated that Plaintiff was not entitled to any relief and that the Bureau had issued a final determination when it produced records in October 2022.  ECF No. 14 at 4, 6.

On August 16, 2023, the Court ordered the Parties to file a joint status report to address next steps in the Bureau's potential production of additional documents.  Min. Order (Aug. 16, 2023).  According to the first report, the Bureau stated it would begin its search after it received a transcript of the motion to dismiss hearing.  ECF No. 15 at 1–2 (stating it would conduct a search "by reference to the summary provided by the Court").  The Court denied the Bureau's request, noting that "[a]lthough counsel for Defendant objects to the setting of dates at this point because they have not yet obtained the transcript of the July 13, 2023 proceeding, they have had ample opportunity to obtain the transcript, and their failure to do so should not further delay these proceedings."  Min. Order (Sep. 25, 2023).  Accordingly, the Court ordered the Bureau to confer with Plaintiff about search terms.  *See id.*

The Parties then reached an agreement on the scope of the search.  *See* ECF No. 16 at 1.  The new search included Galloway's communications with additional employees.  Read Decl. ¶ 17.  On April 18, 2024, the Bureau made its second and final production of 3,493 pages.  ECF No. 20 at 1.  On August 19, 2024, Plaintiff stated that it was satisfied with the Bureau's search, production, and withholding of documents.  ECF No. 21 at 1.

On December 18, 2024, Plaintiff filed this Motion seeking a fee award of $55,727.79.  ECF No. 23 at 1.  The Bureau opposes the Motion on the grounds that Plaintiff is neither eligible nor entitled to fees.  ECF No. 25 at 7.  The Bureau further argues that the fees Plaintiff seeks are

unreasonable.  *See id.*  Plaintiff has since updated its request to include the fees it incurred drafting

its reply brief, for a total of $87,109.92.  ECF Nos. 26 at 5; 26-8 at 3.

**ANALYSIS**

Under FOIA's fee recovery provision, a "court may assess against the United States

reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the

complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  To recover attorneys' fees

under this statute, a plaintiff must be both eligible for and entitled to fees.  *See McKinley v. Fed.

Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014).  Even if a plaintiff meets this standard, its

fees and costs must be reasonable.  *See ACLU v. DHS*, 810 F. Supp. 2d 267, 274 (D.D.C. 2011).

Here, although Plaintiff has shown that it is both eligible for and entitled to fees, the amount

Plaintiff seeks is unreasonable.

## I.    Plaintiff is Eligible to Recover Attorneys' Fees.

### A.    Legal Standard

A plaintiff is eligible for fees if it has substantially prevailed in the litigation.  *See Grand

Canyon Tr. v. Bernhardt*, 947 F.3d 94, 95 (D.C. Cir. 2020) (per curiam).  This means the plaintiff

has "obtained relief through either (I) a judicial order, or an enforceable written agreement or

consent decree; or (II) a voluntary or unilateral change in position by the agency, if the

complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).  A plaintiff may recover

fees under the second prong through the "catalyst theory."  *Grand Canyon*, 947 F.3d at 95.

Under the catalyst theory, the question is whether the litigation (as opposed to other factors)

caused the agency to release the documents.  *See id.* at 97.  The plaintiff must show "that it is more

probable than not that the government would not have performed the desired act absent the

lawsuit."  *Id.* (citations omitted).  To establish causation, a plaintiff cannot rely solely on the timing

of the complaint and the subsequent release of the documents.  *See id.*  Instead, a plaintiff must

show that "hard evidence—beyond temporal proximity—supports the inference that the plaintiff's lawsuit caused the document release or other requested relief." *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 206 (D.D.C. 2016). Evidence of a change may include, for example, when an agency took an earlier litigation position opposing disclosure but then changed its position. *See, e.g.*, *Am. Immigr. Council v. DHS*, 82 F. Supp. 3d 396, 403 (D.D.C. 2015) (finding a causal relationship where agency released significant number of responsive documents despite initially resisting disclosure by filing summary judgment motion).

A plaintiff cannot merely point to the agency's delay in responding to the request. *See Cox v. DOJ*, 601 F.2d 1, 6 (D.C. Cir. 1979), *overruled on other grounds by Benavides v. Bureau of Prisons*, 993 F.2d 257 (D.C. Cir. 1993).[2] Of course, a significant delay may provide an inference that the agency forgot about or ignored the request. *See Elec. Priv. Info. Ctr. v. DHS* ("*EPIC IV*"), 218 F. Supp. 3d 27, 41 (D.D.C. 2016) (citing *Weisberg v. DOJ*, 745 F.2d 1476, 1496 (D.C. Cir. 1984)). The Court should consider whether other factors caused the delay. *See id.* For example, a delay may result from an agency's backlog in FOIA requests. *See Conservation Force*, 160 F. Supp. 3d at 206.

###### B.    Discussion

Plaintiff relies on the catalyst theory to establish eligibility. *See* ECF No. 23-14 at 17, 21–23. Plaintiff argues that the Bureau was initially unwilling to search for responsive records, and that it only changed its position and released nearly 3,500 pages because of the lawsuit. *See id.* at

---

[2]    Although the Supreme Court in *Buckhannon v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001) overruled cases in this Circuit applying the catalyst theory, including *Cox v. DOJ*, 601 F.2d 1 (D.C. Cir. 1979), Congress abrogated *Buckhannon* as applied to FOIA cases and reinstated catalyst theory jurisprudence. *See Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 525 (D.C. Cir. 2011) ("The purpose and effect of this law, which remains in effect today, was to change the 'eligibility' prong back to its pre-*Buckhannon* form.").

18–23.  The Bureau responds that Plaintiff has failed to show anything more than temporal proximity, which is insufficient to support an award of fees.  *See* ECF No. 25 at 9–13.

Plaintiff has established that it is more probable than not that the lawsuit caused the Bureau to complete its search and release 3,500 pages of responsive documents.  A close review of the record reflects that the Bureau changed positions during and because of the litigation.  At the outset, the Bureau argued that Plaintiff's FOIA request was improper.  Specifically, the Bureau moved to dismiss the lawsuit on the basis that Plaintiff failed to reasonably describe the records it sought in its request.  ECF No. 9 at 3.  The Bureau did not voluntarily or spontaneously change its position.  It only conferred with Plaintiff and agreed to search for additional responsive documents *after* the Court denied the motion to dismiss and ordered the Bureau to proceed with its production.  ECF No. 16 at 1.  As such, the Bureau ultimately completed a broader search and production, an action contrary to "the litigation position it took at the start of this case."  *Sierra Club v. EPA*, No. 19-cv-3018, 2021 WL 7210058, at *2 (D.D.C. Mar. 31, 2021); *see* ECF No. 20 at 1.

The Bureau's arguments to the contrary are unpersuasive.  The Bureau argues that it always intended to produce documents and relies on its initial production of ninety-seven pages in October 2022 to bolster its claim.  *See* ECF No. 25 at 13–14.  Yet nothing in the record reflects that the Bureau had an ongoing intent to satisfy Plaintiff's request.[3]  In fact, for nine months after October 2022, the Bureau challenged Plaintiff's request as improper without any indication that the Bureau had already made a production or that it would produce additional documents.  *See generally* ECF No. 9 (seeking to dismiss case based solely on the argument that Bureau was not required to honor

---

[3]     Although the Bureau argues that it made a good faith effort to resolve the dispute, the effort was half-hearted at best.  ECF No. 25 at 10.  Berhane sent Sorenson a few emails, but neither Berhane nor anyone else representing the Bureau ever attempted to engage in any meaningful negotiations on the phone or in person.  *See* ECF Nos. 25-1; 25-3 at 2.  In any event, the Bureau never withdrew its motion to dismiss.

the request because Plaintiff failed to reasonably describe the records it sought).  The first time the

Bureau acknowledged its initial production was in its Answer in August 2023.  *See* ECF No. 14 at

4.  Even then, however, the Bureau repeated its position that Plaintiff was not entitled to any relief.

*Id.* at 6; *see, e.g.*, *Sierra Club*, 2021 WL 7210058, at *2 (citing agency's defense in its Answer that

"Plaintiff's request does not reasonably describe the records sought" as evidence that agency did

not intend to produce records).  Even after that, the Bureau refused to conduct a search until after

it obtained a transcript with the Court's ruling.  *See* ECF No. 15 at 2–3.  As the Bureau itself

explains, it "refrained from producing additional records" but then "subsequently performed this

same [broader] search *at the Court's instigation*."  ECF No. 25 at 13 (emphasis added).  In light

of these undisputed facts, it is clear that, had Plaintiff not initiated this lawsuit, the Bureau would

not have ultimately made its substantial April 2024 production.  It was this production, in which

the Bureau released 3,500 more pages of responsive records, that constituted the Bureau's change

in position.  *See, e.g.*, *Los Padres ForestWatch v. U.S. Forest Serv.*, 775 F. Supp. 3d 353, 363

(D.D.C. 2025) (noting a change in position may include "when the agency had indicated that it

had completed its search for documents responsive to the plaintiff's FOIA request only to conduct

additional searches after the requester filed suit" (citation modified)).

       The Bureau's attempt to recast the Court's motion to dismiss ruling as favorable to the

Bureau is also unavailing.  *See* ECF No. 25 at 21 (describing the motion as "ultimately successful,

even if it was eventually denied as moot").  The Court noted that Plaintiff's request, though not

perfect, was sufficiently clear.  *See* ECF No. 18 at 3:14–16 ("[I]f I'm able to read it correctly like

that, why is it a problem for the Bureau of Land Management?  Isn't it sufficiently clear?").  The

Court denied the Bureau's motion and ordered the Bureau to produce specific documents.  *See id.*

at 5:17–22, 6:25–7:1.

The Bureau's significant delay in producing responsive documents is also relevant. Although a plaintiff may not rely on delay alone to establish causation, the Bureau has failed to show that it would have produced the full tranche of responsive documents absent the lawsuit. *See, e.g.*, *Dorsen v. SEC*, 15 F. Supp. 3d 112, 120 (D.D.C. 2014) (finding delay sufficient to support causation when government failed to show it would have released documents that it had argued were subject to exemptions). Read has stated that the office's FOIA backlog caused the delay in response. Read Decl. ¶ 11. This explanation, however, accounts only for the delay between receipt of Plaintiff's FOIA request and the initial release of ninety-seven pages. The record reflects that the litigation, not the backlog, caused the delayed release of an additional 3,500 pages. Thus, Plaintiff is eligible for fees.

## II.    Plaintiff is Entitled to Recover Attorneys' Fees.

### A.    Legal Standard

Courts weigh four factors in determining entitlement: 1) the public benefit derived from the case; 2) the commercial benefit to the plaintiff; 3) the nature of the plaintiff's interest in the records; and 4) the reasonableness of the agency's withholding of the requested documents. *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 711 (D.C. Cir. 2014). No one factor is dispositive. *See Morley v. CIA* (*"Morley II"*), 894 F.3d 389, 391 (D.C. Cir. 2018) (per curiam). District courts have broad discretion to decide how to balance the factors. *See id.*

### B.    Discussion

Plaintiff argues that it has satisfied all four factors. *See* ECF No. 23-14 at 27. The Bureau principally argues that the public benefit and reasonableness factors weigh against entitlement. ECF No. 25 at 14. The Bureau further appears to argue that the nature of Plaintiff's interest weighs against entitlement but concedes that Plaintiff did not seek a commercial benefit. *Id.* A review of the record reflects that all factors weigh in favor of Plaintiff.

### 1.    Public Benefit

Plaintiff argues that the first factor weighs in its favor because the FOIA request was critical to its investigative and public communications work regarding the Program. *See* ECF No. 23-14 at 28. Plaintiff further contends that the Program is a matter of public interest. *See id.* The Bureau argues that Plaintiff has failed to show that the internal communications Plaintiff sought would serve the public. *See* ECF No. 25 at 15. The Bureau also argues that Plaintiff's failure to sufficiently review the records undermines Plaintiff's public benefit argument. *See id.* at 15–16. Plaintiff is correct.

The Court assesses the public benefit of the case by considering two issues: 1) the effect of the litigation; and 2) the potential public value of the information that the plaintiff sought. *See Morley v. CIA* (*"Morley I"*), 810 F.3d 841, 844 (D.C. Cir. 2016). First, the Court should consider "whether the litigation has caused the release of requested documents." *Id.* This is another way of asking whether a plaintiff substantially prevailed. *Id.* Second, and more importantly, the Court should conduct "an *ex ante* assessment of the potential public value of the information requested, with little or no regard to whether any documents supplied prove to advance the public interest." *Id.*

The public benefit of Plaintiff's case weighs in favor of entitlement to fees. First, Plaintiff has shown this litigation caused the release of the records. *See supra* Analysis § I.B. Second, Plaintiff has shown that it is plausible that its request had a "decent chance of yielding a public benefit" at the time Plaintiff filed suit. *Morley I*, 810 F.3d at 844. Plaintiff requested records including internal communications that otherwise would not be publicly available. *See* Read Decl. ¶ 17 (describing additional records to include internal email chains and meeting invites); *see, e.g.*, *Urb. Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301, 314 (D.D.C. 2020) (finding public benefit where plaintiff sought records including non-public email exchanges). Additionally, Plaintiff

sought records about the Program, a matter of public importance. For example, news outlets including *The New York Times* have reported on the Program. Perrin Decl. ¶ 13; *see, e.g.*, *Elec. Priv. Info. Ctr. v. DHS* ("*EPIC II*"), 892 F. Supp. 2d 28, 50–51 (D.D.C. 2012) (noting media coverage shows that the subject matter of records was newsworthy and, thus, of public importance). Certainly, Plaintiff's attempt to investigate abuse within the federal program would likely render a benefit to the public.

The Bureau cites *Trotter v. Center for Medicare & Medicaid Services* for the proposition that mere conclusory statements are inadequate to show that any public benefit was derived from the request. *See* ECF No. 25 at 15 (citing *Trotter v. Ctr. for Medicare & Medicaid Servs.*, No. 19-cv-2008, 2022 WL 951377, at *3 (D.D.C. Mar. 30, 2022)). *Trotter*, however, is distinguishable. There, the court concluded that the plaintiff failed to show a nexus between the records sought and the plaintiff's goal of reducing agency waste, fraud, and abuse. *See Trotter*, 2022 WL 951377, at *3. By contrast, here, Plaintiff has shown a nexus between Galloway's internal communications and Plaintiff's investigation. *See* Perrin Decl. ¶ 14 (identifying Galloway as a relevant employee involved in the Program). Galloway's communications could plausibly reveal that the Bureau was aware of the problems that Plaintiff had been investigating. *See id.* ¶ 16. Thus, unlike in *Trotter*, Plaintiff's request had "at least a modest probability of generating useful new information about a matter of public concern." *Morley I*, 810 F.3d at 844.

The Bureau also argues that Plaintiff failed to review the records. ECF No. 25 at 16. This argument is both factually incorrect and legally irrelevant. The Bureau's evidence is thin at best and does not establish that Plaintiff failed to review the documents. *Id.* (discussing fact that counsel for Plaintiff requested an access link for second production but not for first). Even assuming the Bureau is correct, however, this Circuit has clearly instructed courts to conduct an

*ex ante* assessment of the potential public value of the information. *See Morley I*, 810 F.3d at 844; *see, e.g.*, *Los Padres ForestWatch*, 775 F. Supp. 3d at 366–67 (rejecting argument that "falls into the trap of attempting an *ex-post* analysis of the value of the records that were revealed, rather than an *ex-ante* evaluation of what the litigation was likely to reveal"). For this reason, the Court need not consider whether Plaintiff reviewed the documents on the Bureau's timeline as long as the documents had potential public benefit at the start of the litigation.

## 2.    Commercial Benefit and Nature of the Interest

Plaintiff argues that both the commercial benefit and nature of interest factors weigh in its favor for two primary reasons: 1) Plaintiff is a nonprofit organization; and 2) it sought the records to inform the public and conduct investigations into the Bureau's activities. *See* ECF No. 23-14 at 31–32. The Bureau concedes the commercial interest factor and fails to make any meaningful argument on the nature of interest factor. *See* ECF No. 25 at 14.

Both factors "assess whether a plaintiff has sufficient private incentive to seek disclosure without attorney's fees." *Kwoka v. IRS*, 989 F.3d 1058, 1064 (D.C. Cir. 2021) (citation omitted). Courts often consider both factors together. *See id.* If a plaintiff requested documents based on a private, self-interested motivation or a commercial pecuniary benefit, a fee award would be inappropriate. *See Davy v. CIA*, 550 F.3d 1155, 1161 (D.C. Cir. 2008). On the other hand, courts generally award fees to plaintiffs whose interests in the records are scholarly, journalistic, or public-interest oriented, unless those interests are of a frivolous or purely commercial nature. *See id.* at 1160–61.

Here, the Bureau rightly concedes that Plaintiff had no commercial interest in its request. ECF No. 25 at 14. Given this concession, the Bureau's position that the nature of the interest factor weighs against Plaintiff is confusing. *Id.* In any event, both factors weigh in favor of a fee award. Plaintiff is a nonprofit organization whose goal is to advance the public interest. Perrin

Decl. ¶ 3; *see, e.g.*, *Los Padres ForestWatch*, 775 F. Supp. 3d at 364–65 (weighing both factors in favor of award where plaintiff was a nonprofit seeking records to carry out its public service mission). Further, nothing in the record suggests that Plaintiff's request was frivolous. Finally, the Bureau's argument that Plaintiff was apparently disinterested in the records is irrelevant. ECF No. 25 at 14. Even if Plaintiff did not review the records in a timely manner, this has no bearing on whether Plaintiff held a private or commercial interest in the records.

### 3.    Reasonableness of Withholding

Plaintiff argues that the Bureau had no reasonable basis for delaying its production. ECF No. 23-14 at 32–38. The Bureau argues that, because Plaintiff never contested the withholdings or the adequacy of the searches, the Court need not decide whether the Bureau's actions were reasonable. ECF No. 25 at 17. The Bureau further argues that, in any event, its delay in processing the request was reasonable. *Id.* at 17–19.

To evaluate the reasonableness factor, courts consider "whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit." *Davy*, 550 F.3d at 1163. If the agency's position is correct as a matter of law, then the Court should not award fees. *See id.* at 1162. If the agency's position merely has a colorable basis in law, however, then the Court weighs this factor against the other factors. *See id.* Because the agency bears the burden on this factor, the plaintiff need not affirmatively show that the agency was unreasonable. *See id.* at 1163.

Here, the Bureau has failed to meet its burden. *First*, the Bureau misconstrues this factor. According to the Bureau, Plaintiff's failure to contest the Bureau's determinations means Plaintiff has agreed "there was no improper withholding, [and] the Court need not decide whether the agency had a 'colorable or reasonable basis.'" ECF No. 25 at 17 (quoting *Gov't Accountability Project v. DHS*, No. 17-cv-2518, 2020 WL 4931932, at *2 (D.D.C. June 2, 2020)). The Bureau

appears to construe the reasonableness inquiry as applicable only when a plaintiff has challenged an agency's withholdings or redactions based on FOIA exemptions.  The Bureau is wrong.  The relevant question is, more broadly, whether the Bureau had a reasonable basis for the position it took.  *See, e.g.*, *Davy*, 550 F.3d at 1163 (evaluating reasonableness of agency's failure to respond to request); *Morley II*, 894 F.3d at 394 (evaluating reasonableness of agency's decision to direct requestor to the National Archives rather than search for the agency's copies of documents).

*Second*, the Bureau's argument that Plaintiff never challenged the adequacy of the Bureau's searches is inaccurate and, ultimately, irrelevant.  *See* ECF No. 25 at 17.  Plaintiff is seeking fees that it incurred throughout the litigation, including when it filed its Complaint.  In its Complaint, Plaintiff alleged that the Bureau "failed to conduct a reasonable search for records responsive to the request."  ECF No. 1 ¶ 32.  Further, Plaintiff's satisfaction with the Bureau's *ultimate* production is irrelevant as to whether the Bureau acted reasonably leading up to that production.

*Third*, the Bureau mischaracterizes the record.  By arguing that an administrative delay justified the Bureau's conduct, the Bureau misses the point.  The Bureau's initial response to Plaintiff's lawsuit was to file a motion to dismiss.  ECF No. 9.  The Bureau fails to grapple with this decision—which clearly reflected a resistance to producing the records.  Instead, the Bureau merely states that it was seeking "clarity on the records sought by Plaintiff via it improper FOIA request."  ECF No. 25 at 18.  The Court already rejected the argument that Plaintiff's request was improper and unclear.  *See* ECF No. 18 at 3:14–16.  Beyond that, the Bureau has failed to articulate any reasonable basis to justify its decision to seek dismissal.  As such, it was not merely an administrative "delay" that caused obstacles to resolving this case.

### III.    Plaintiff is Not Entitled to the Full Fee Award It Seeks.

Plaintiff seeks a total of $87,109.92 in fees and costs using the Fitzpatrick Matrix, with a voluntary 5% discount off the total.  ECF Nos. 23-2; 26 at 5.  To support its request, Plaintiff has

submitted two declarations from its lead counsel and billing partner, Peter Sorenson, as well as all backup documentation. *See* Decl. of C. Peter Sorenson, ECF No. 23-6 ("Sorenson Decl."); ECF Nos. 23-7; 23-8; 23-9; 23-11; 23-12; 23-13; Second Decl. of C. Peter Sorenson, ECF No. 26-6 ("Second Sorenson Decl."); ECF Nos. 26-7; 26-8. The Bureau argues that Plaintiff should not be awarded any fees and, if it is, the fee award should be no more than $3,000. *See* ECF No. 25 at 19–28. Although the Bureau makes a number of arguments, the Bureau does not submit any evidence or declarations in rebuttal. Nor does the Bureau dispute Plaintiff's costs. As set forth below, Plaintiff should recover a total award of **$58,741.78**.

### A.    Legal Standard

The usual method of calculating reasonable attorneys' fees is "to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." *Bd. of Tr. of Hotel & Rest. Emps. Loc. 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998) (citation omitted). The plaintiff bears the burden to establish the reasonableness of both the number of hours and the hourly rate. *See EPIC IV*, 218 F. Supp. 3d at 47 (citing *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004)). To do so, the plaintiff must provide "contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Id.* (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)). The plaintiff may rely on affidavits, declarations, and billing records. *Id.* (citation omitted). If a plaintiff meets its burden, the government must "rebut the presumption of reasonableness with specific evidence." *Id.* (citing *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995)). The Court has discretion to adjust the fee award based on relevant factors. *See id.*

### B.    Discussion

#### 1.    Plaintiff's Rates are Reasonable.

Plaintiff has set the billing rates for this fee award using the Fitzpatrick Matrix, which provides the prevailing market rates for attorneys and paralegals in complex federal litigation in this District.  *See* ECF No. 23-14 at 39; Sorenson Decl. ¶ 22; *see, e.g.*, *Los Padres ForestWatch*, 775 F. Supp. 3d at 369–70 (accepting Fitzpatrick Matrix as reasonable under FOIA fee-shifting provision).  In his declaration, Sorenson lists the timekeepers, their respective years of experience, and the applicable billing rate for each timekeeper.  *See* Sorenson Decl. ¶¶ 11, 22–23.  The Bureau does not contest that the Fitzpatrick Matrix provides the correct rates for this type of litigation.  *Id.* ¶ 19.  Nor does the Bureau challenge Plaintiff's application of those rates to the relevant timekeepers.  Accordingly, the Court accepts Plaintiff's proposed billing rates as reasonable.

#### 2.    Hours Spent are Unreasonable.

##### a.    Fees Spent Opposing the Motion to Dismiss are Reasonable.

The Bureau argues that Plaintiff may not recover for fees incurred opposing the Bureau's motion to dismiss.  ECF No. 25 at 20–21.  Plaintiff seeks $11,030.40 to cover 50.2 hours spent at the motion to dismiss stage.  *See* ECF No. 23-11 at 3–5 (entries dated Nov. 15, 2022 through July 13, 2023).[4]

The Bureau makes a number of arguments, none of which are persuasive.  First, the Bureau incorrectly argues that these hours were excessive because Plaintiff was ultimately unsuccessful in opposing the motion.  ECF No. 25 at 21.  In fact, Plaintiff won at the motion to dismiss phase. *See supra* Analysis § I.B.  Second, the approximately forty hours Plaintiff spent drafting its

---

[4]    Because Plaintiff does not parse out the hours it spent on the motion to dismiss, the Court has conducted a rough calculation based on Plaintiff's timesheets.  *See* ECF Nos. 23-11; 26-8.

opposition brief were not excessive.  The Bureau's motion was nine pages long and raised seven

points.  *See* ECF No. 9.  Counsel for Plaintiff reasonably spent 36.2 hours to research and write a

twenty-three-page opposition.  *See* ECF No. 10; *cf. Copeland v. Marshall*, 641 F.2d 880, 904 (D.C.

Cir. 1980) ("The government cannot litigate tenaciously and then be heard to complain about the

time necessarily spent by the plaintiff in response.").  Plaintiff further bolsters the reasonableness

of the amount because Plaintiff has already applied a discount: although an associate attorney

(Alex D. Sanchez) contributed thirty hours to the brief, Sorenson billed those hours at a paralegal

rate.  *See* Sorenson Decl. ¶ 11; ECF No. 23-11 at 2–3 (entries dated Nov. 17, 2022 through Nov.

29, 2022).  Finally, although the hearing was ultimately only about fifteen minutes, Sorenson and

Brooklyn Stenstrom (a law student billed at a paralegal rate) reasonably spent a collective eleven

hours to prepare for and attend the hearing.  *See* ECF Nos. 18; 23-11 at 4–5 (entries dated July 4,

2023 through July 13, 2023).  Accordingly, there is no basis to reduce the award for the fees

incurred at this stage of the litigation.

### b.    Fees Spent for Work Performed After the Bureau's April 18, 2024 Production Should Be Reduced.

The Bureau next argues that Plaintiff may not recover fees for any hours spent after the

Bureau's April 18, 2024 production.  ECF No. 25 at 22.  These hours were spent on two categories

of tasks: 1) 5.8 hours in attorney and paralegal time spent reviewing documents (approximately

$3,100); and 2) 15.7 hours in attorney and paralegal time spent negotiating a settlement for

attorneys' fees ($7,831.60).  *See* ECF No. 23-11 at 6–9; 23-12 at 2.

*First*, the hours spent reviewing the Bureau's 3,500-page production were reasonable.

Plaintiff's timesheet reflects 3.6 attorney hours and 2.2 paralegal hours spent reviewing the

records, communicating with the client, and emailing opposing counsel regarding a joint status

report.  *See* ECF No. 23-11 at 6–7.  The Bureau argues that Plaintiff's failure to challenge the

Bureau's search or withholdings after that production should preclude Plaintiff's ability to recover fees. ECF No. 25 at 22. Other courts in this District have found, however, that review of documents is necessarily part of FOIA litigation. *See, e.g.*, *Reyes v. U.S. Nat'l Archives & Recs. Admin.*, 356 F. Supp. 3d 155, 172 (D.D.C. 2018) (concluding that because "the released documents [were] being reviewed to evaluate the sufficiency of the release [and] the propriety of a specific withholding . . . , such document review time is properly included in [the] FOIA attorney's fees award'" (quoting *Elec. Priv. Info. Ctr. v. FBI*, 80 F. Supp. 3d 149, 159 (D.D.C. 2015)). Here, counsel has reasonably billed for less than six hours (including less than four attorney hours) to review thousands of documents and prepare for next steps in the litigation. *See* ECF No. 23-11 at 6–7 (entries dated Apr. 18, 2024 through Aug. 19, 2024).

*Second*, Plaintiff may recover for hours spent attempting to negotiate the fee award, but those hours should be reduced. As an initial matter, the Bureau's argument that Plaintiff may not recover for *any* of these hours is wrong. The Bureau relies on the Supreme Court's decision in *Hensley v. Eckerhart* to argue that Plaintiff may not recover fees when its efforts to reach an agreement were unsuccessful. ECF No. 25 at 22 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983)). *Hensley* merely stands for the proposition that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." 461 U.S. at 440. Thus, "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* Plaintiff has prevailed to some extent here: Plaintiff's attempts to settle were part of its larger effort to obtain fees. *See, e.g.*, *Los Padres ForestWatch*, 775 F. Supp. 3d at 374 (rejecting similar argument and finding that plaintiff prevailed "to some extent, by obtaining fees here" even though "the parties' settlement discussions did not bear fruit"). Accordingly, *Hensley* does not preclude Plaintiff from recovering

fees for hours spent attempting to negotiate and settle the fees issue. *See, e.g.*, *id.*; *Coffey v. Bureau of Land Mgmt.*, 316 F. Supp. 3d 168, 172 (D.D.C. 2018) (awarding fees for work toward settlement of fees dispute).

The Bureau's argument that Plaintiff's attempts to settle were "largely conducted in a perfunctory manner" is also unpersuasive. ECF No. 25 at 22. Courts have declined to award fees for unsuccessful negotiations when the plaintiff's actions have unnecessarily prolonged the case. *See, e.g.*, *Elec. Priv. Info. Ctr. v. DHS* ("*EPIC III*"), 197 F. Supp. 3d 290, 297 (D.D.C. 2016) (disallowing fees because "[s]ignificant chunks of EPIC's fee-on-fees request are essentially for prior failed efforts to extract fees through negotiation, divorced from any formal fee request"); *Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 87 F. Supp. 3d 223, 236 (D.D.C. 2015) (disallowing fees because of the plaintiff's "sharp practice of extending and then withdrawing settlement offers"). Nothing in this record reveals any actions on Plaintiff's part that unnecessarily prolonged this case. On October 1, 2024, Sorensen extended a settlement offer in an eight-page letter, in which he detailed the demand and attached supporting documentation. Second Sorenson Decl. ¶ 31. On October 17, Berhane responded by email that he would "seek approval to enter negotiations and ask the agency *if it would be willing to negotiate settlement*, if Plaintiff is willing to accept a significantly reduced amount than the $30k+ sought in the initial settlement demand." ECF No. 25-7 at 2 (emphasis added). On October 28, Sorensen replied with a proposal to narrow the issues for briefing the fee petition. ECF No. 23-10. As Sorenson has attested, Plaintiff did not move forward with negotiations because "Plaintiff was not willing to accept a significantly reduced amount," as Berhane had suggested. Second Sorenson Decl. ¶ 32. These facts reflect a reasonable effort on Plaintiff's part to resolve the fee dispute without motions.

Notwithstanding the conclusion that Plaintiff may recover *some fees* for this work, Plaintiff's fee award should be reduced. The 15.7 hours that Plaintiff has submitted account for time spent drafting a settlement letter and sending two emails to opposing counsel. *See* ECF No. 23-11 at 7–8 (entries dated Aug. 27, 2024 through Oct. 18, 2024). Importantly, it does not appear that Plaintiff ever engaged in mediation or any in-person or telephonic negotiations. Thus, it is appropriate to reduce Plaintiff's award to approximately seven attorney hours using a rate of $538 per hour (the rate of Thomas Herbert Housel, the primary timekeeper), which equals $3,766.00.[5] Applying Plaintiff's voluntary 5% discount, the total recoverable fee for time spent on settlement negotiations is $3,577.70.

### c.    Other Fees that the Bureau Challenges are Reasonable.

The Bureau challenges a category of fees that are "vague and/or of uncertain relevance to this case" or that "relate to work that was duplicative of other work performed or was otherwise unnecessary." ECF No. 25 at 25. The Bureau does not, however, identify the entries it claims fall into these categories. *See id.* at 25–26.

Plaintiff has met its burden to establish a presumption of reasonableness for its fees by submitting a sufficiently detailed timesheet recording the work and hours counsel spent in six-minute increments. *See Covington*, 57 F.3d at 1110; *see generally* ECF No. 23-11. Here, the "vast majority of billing entries are appropriately detailed and allow [the Court] to discern with a high degree of certainty the work for which [Plaintiff is] requesting compensation." *WP Co. v. U.S. Small Business Admin.*, 514 F. Supp. 3d 267, 279 (D.D.C. 2021) (citation modified). The Bureau has failed to rebut that presumption.

---

[5]    This amount means the Court reduces Plaintiff's award by $4,065.60 (7,831.60 – 3,766.00 = 4,065.60). That total does not include the 5% discount.

*First*, the Bureau has failed to articulate with sufficient detail which entries it is challenging or how it proposes the Court should reduce Plaintiff's award. *Cf. Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1338 (Tamm, J., concurring) ("It is not enough for an opposing party simply to state, for example, that the hours claimed are excessive and the rates submitted too high."). The Bureau's most specific argument relates to the time Plaintiff spent drafting the Complaint. ECF No. 25 at 26. The timesheet shows 8.5 hours for the time Plaintiff spent reviewing the administrative record through writing, editing, and filing the Complaint. ECF No. 23-11 at 2 (entries dated Sep. 16, 2022 through Oct. 2, 2022). This does not reflect overbilling. For one, 8.5 hours is well within the range of reasonableness for drafting a complaint in FOIA cases. *See, e.g.*, *Elec. Priv. Info. Ctr.*, 80 F. Supp. 3d at 158 (adjusting award to 9.5 hours); *Elec. Priv. Info. Ctr. v. DHS* ("*EPIC I*"), 811 F. Supp. 2d 216, 238 (D.D.C. 2011) (finding twenty hours excessive). Moreover, a law student (Elise Josephson) contributed 3.5 of those hours, which Sorenson billed at a paralegal rate. *See* ECF No. 23-11 at 2 (entries dated Sep. 30, 2022 through Oct. 1, 2022); Sorenson Decl. ¶ 11. The associate attorney (Alex D. Sanchez) who spent 3.5 hours to draft, edit, review, and file the Complaint also billed at a reduced paralegal rate. *See* ECF No. 23-11 at 2 (entry dated Oct. 2, 2022); Sorenson Decl. ¶¶ 10–11.

Otherwise, the Bureau merely provides a few vague examples: internal correspondence, reviewing the complaint, reviewing the file, "unspecified emails," and "other dubious tasks." ECF No. 25 at 26. Upon review of the Bureau's unhelpful examples, those entries reflect time reasonably spent on tasks such as case management and client communication, not "nonproductive time" that must be excluded. *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327; *see, e.g.*, *Urb. Air Initiative*, 442 F. Supp. 3d at 326 ("The Court does not find that tasks such as emailing clients

or opposing counsel need to be isolated and struck from plaintiffs' requested award as they are necessary parts of litigating a claim.").

*Second*, the Bureau has failed to submit any testimony to rebut the reasonableness of the hours. *See Covington*, 57 F.3d at 1111 ("Simply put, although the District does not bear the ultimate burden in this case, its evidence did not come close to rebutting the presumption of reasonableness plaintiffs established."). It is not the Court's job to sift through each timesheet and guess what the Bureau is challenging as "vague," "duplicative," or "unnecessary." ECF No. 25 at 25. The Supreme Court has been clear that "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Rather, in "tak[ing] into account the[] overall sense" of the case, doing "rough justice" here supports awarding Plaintiff most of the fees it seeks. *Id.* Plaintiff has submitted a largely reasonable request, and the Bureau has failed to sufficiently explain or substantiate its challenges. Accordingly, the Court declines to reduce the fees that the Bureau challenges.

### d. Fees for Hours Spent Litigating this Motion are Unreasonable.

The Bureau contends that Plaintiff should not recover for the hours it spent litigating this Motion. ECF No. 25 at 26–28. Before the 5% discount, Plaintiff seeks $31,252.10 for 54 attorney hours and 9.4 paralegal hours spent on this Motion, plus $23,337.70 for 36.8 attorney hours and 3.3 paralegal hours spent on the reply brief. *See* ECF No. 26-8 at 2. The total amount that Plaintiff seeks for these "fees-on-fees" tasks equals $54,589.80. With a 5% discount, that brings the fees to $51,860.31.

It is well-settled that "[h]ours reasonably devoted to a request for fees are compensable." *Reyes*, 356 F. Supp. 3d at 173 (quoting *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 528 (D.C. Cir. 1985)). That said, a "request for attorney's fees should not result in a second

major litigation." *Hensley*, 461 U.S. at 437. Courts must "scrutinize fees-on-fees to insure [sic] that the total is reasonable and . . . does not represent a windfall for the attorneys." *Urb. Air Initiative*, 442 F. Supp. 3d at 327 (citation modified). Here, Plaintiff may recover for some fees because it has supported its request with appropriate documentation. Plaintiff drafted a forty-three-page brief, prepared four declarations, calculated fees, and gathered relevant documentation. *See generally* ECF Nos. 23; 23-3–23-14. Further, Plaintiff drafted a twenty-five-page reply brief in response to the Bureau's twenty-nine page opposition. *See generally* ECF Nos. 25; 26. Plaintiff's award should, however, be reduced.

*First*, hours spent during the reply phase were excessive. For example, on January 22, 2025, two attorneys collectively billed 1.5 hours for time spent addressing the Bureau's motion for an extension. *See* ECF No. 26-7 at 16–17 (entries dated Jan. 22, 2025). Similarly, Plaintiff billed 5.8 hours to draft the Second Sorenson Declaration, even though that declaration is largely duplicative of the first Sorenson Declaration. *See id.* at 16–21; *compare* Sorenson Decl. *with* Second Sorenson Decl. These are but two examples that illustrate the Court's "overall sense" of the case at this stage. *Fox*, 563 U.S. at 838. Although the reply brief was substantive, fees of $23,000 for 36.8 attorney hours is unreasonable.

*Second*, the fees-on-fees request is disproportionate to the total award. Courts often consider "whether the fees-on-fees award would be a disproportionately large amount compared to the fee award for the non-fee aspects of the litigation." *Los Padres ForestWatch*, 775 F. Supp. 3d at 373 (citation modified). Using Plaintiff's calculations, the request for $51,860.31 equals more than 59% of Plaintiff's total request. This is well beyond what many courts have found to be reasonable. *See, e.g.*, *Los Padres ForestWatch*, 775 F. Supp. 3d at 373 (reducing fees-on-fees award when requested amount accounted for over 75% of entire request); *Urb. Air Initiative*, 442

F. Supp. 3d at 327 (reducing fees-on-fees award when requested amount accounted for almost 30% of the claimed total litigation costs).

*Third*, the total amount that Plaintiff seeks is significantly higher than the fees-on-fees awards that other courts have granted in FOIA cases. *See, e.g.*, *Urb. Air Initiative*, 442 F. Supp. 3d at 327 (awarding $10,000); *Coffey*, 316 F. Supp. 3d at 172–73 (awarding $15,043 for the fee motion and $9,628 for the reply); *Protect the Pub.'s Tr. v. IRS*, No. 23-cv-340, 2024 WL 663427, at *14 (D.D.C. Feb. 16, 2024) (awarding $12,603.40); *Barton v. U.S. Geo. Surv.*, No. 17-cv-1188, 2019 WL 4750195, at *9 (D.D.C. Sep. 29, 2019) (awarding $12,500, equal to more than 25% of the fee for litigating the underlying matter).

Considering the specific entries Plaintiff has submitted and precedent under FOIA's fee-shifting provision, the Court should reduce Plaintiff's award to an amount equal to the fees Plaintiff may recover for the merits phase. *See, e.g.*, *Los Padres ForestWatch*, 775 F. Supp. 3d at 373 (awarding $20,726.03 which equals the fee award for the merits). Accordingly, Plaintiff should be awarded $27,354.49 for this phase.

### C.    Calculation

Using Plaintiff's summary chart (ECF No. 26-8, which the Bureau does not challenge) as a baseline, the Court's calculations are as follows:

| Major Litigation Phase | Requested Amount before 5% Discount | Total Amount Awarded (includes 5% discount) |
|---|---|---|
| Merits Phase (September 16, 2022 to August 26, 2024) | $28,794.20 | $27,354.49 |
| Settlement Phase (August 27, 2024 to October 20, 2024) | $7,831.60 | $3,577.70 |
| Fee Motion Phase + Fee Motion Reply Phase (December 19, 2024 to April 1, 2025) | $54,589.80 | $27,354.49 |
| Costs | $479.05 | $455.10 |
| **Total Award** | | **$58,741.78** |

## <u>CONCLUSION</u>

For the foregoing reasons, the Court hereby recommends that Plaintiff's Motion be **GRANTED IN PART** and **DENIED IN PART**, and that the District Court should award Plaintiff **$58,741.78** in attorneys' fees and costs.

Date:    July 25, 2025

_____

MOXILA A. UPADHYAYA
United States Magistrate Judge

## <u>REVIEW BY THE DISTRICT COURT</u>

The Parties are advised that under the provisions of Local Rule 72.3(b), any party who objects to a Report and Recommendation must file a written objection with the Clerk of Court within fourteen days of the party's receipt of the Report and Recommendation. The written objections must specifically identify the portion of the report or recommendation to which objection is made and the basis for such objections. Failure to file timely objections to the findings and recommendations set forth in this Report may waive that party's right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).