## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

AMERICAN WILD HORSE CAMPAIGN,

        *Plaintiff*,

    v.

UNITED STATES BUREAU OF LAND
MANAGEMENT,

        *Defendant.*

Civil Action No. 22-2972 (RDM)

---

## <u>MEMORANDUM OPINION</u>

Plaintiff American Wild Horse Campaign ("Campaign") brings this Freedom of Information Act ("FOIA") suit against the United States Bureau of Land Management ("BLM" or "Bureau"). After the Bureau finished producing records in response to Plaintiff's FOIA request, the Campaign moved for attorney's fees and costs. Dkt. 23. The Bureau opposed the motion, Dkt. 25, and the Court referred the fee dispute to Magistrate Judge Upadhyaya for a Report and Recommendation ("R&R") under LCvR 72.3(a)(7) and Fed. R. Civ. P. 54(d)(2)(D), Min. Order (Mar. 28, 2025). Judge Upadhyaya issued an R&R recommending granting in part and denying in part the motion for fees. Dkt. 27. The Campaign accepts the conclusions of the R&R, Dkt. 30 at 3, while the Bureau continues to maintain that Plaintiff is neither eligible for nor entitled to any fees in this case and that the fees sought are, in any event, unreasonable, *see generally* Dkt. 29.

For the reasons explained below, the Court will adopt Judge Upadhyaya's well-reasoned and thorough R&R and will **GRANT** in part and **DENY** in part the Campaign's motion for attorney's fees and costs.

# I. BACKGROUND

Plaintiff, a nonprofit organization that advocates for the conservation of American wild horses, burros, and public lands, Dkt. 23-3 at 1 (Perrin Decl. ¶ 3), filed the relevant FOIA request with the Bureau on July 22, 2021, Dkt. 1-5 at 2.  The Campaign's request stated:

> This request is directed at obtaining an electronic copy of all emails, faxes, letters, memoranda, proposals, reports, contracts, notes, telephone conversations (including text messages), and any other records generated between all Public Affairs staff, all Wild Horse and Burro Specialists, and all Field Managers under the jurisdiction of the Bureau of Land Management's ("BLM") Oklahoma Field Office with James Galloway or Jimmy Galloway.  The time frame for this request is January 1, 2020[,] and the date that this FOIA request is processed.

*Id.* at 3.  The Campaign made the request because of its interest in the BLM Adoption Incentive Program ("AIP"), which compensates individuals for agreeing to adopt a wild horse or burro. Dkt. 23-3 at 3 (Perrin Decl. ¶ 12).  From its previous investigations, the Campaign had learned that some of the animals adopted through the AIP were later sold to kill pens and slaughtered. *Id.*  The Campaign had also learned that James ("Jimmy") Galloway is a Bureau employee who was involved in overseeing compliance with the AIP, *id.* at 3–4 (Perrin Decl. ¶ 14), and it "made [the] request specifically to learn more about the BLM's knowledge and oversight of horses ending up in slaughter auctions, something which the BLM has adamantly denied publicly for years," *id.* at 4 (Perrin Decl. ¶ 16).

The Bureau acknowledged receipt of the FOIA request on the day of its submission, Dkt. 1-6 at 2, but did not take further action for several months.  After failing to answer a series of emails from the Campaign seeking an update, Dkts. 1-7, 1-8, 1-9, the Bureau finally replied on January 4, 2022, stating that it would send a more detailed response within a week, Dkt. 1-10 at 2.  Six days later, the Bureau informed the Campaign that it was "currently reviewing the records that have been submitted . . . by the Oklahoma field office" and "plan[ned] to have a response

dispatched to [it] by next week." Dkt. 1-11 at 2. Thereafter, however, the Bureau remained uncommunicative for another six months, during which time Plaintiff sent several follow-up emails. Dkts. 1-12, 1-13, 1-14, 1-16. The Bureau finally sent a further response to the Campaign on July 19, 2022, explaining that the documents submitted by the field office were "unreadable" and representing that, once the documents were re-sent by the field office, the review of the records would recommence. Dkt. 1-17 at 2. Radio silence resumed. Plaintiff eventually filed this lawsuit on October 2, 2022, requesting that the Court order the Bureau to "conduct a reasonable search for records" and "promptly produce all non-exempt responsive records or portions of records," without "withholding [any] non-exempt public records under FOIA." Dkt. 1 at 5 (Compl.). The Campaign also sought "attorney['s] fees and costs." *Id.*

The Bureau filed a motion to dismiss the complaint on November 15, 2022. Dkt. 9. Even though the Bureau had previously represented that it had located—and was in the process of reviewing—records responsive to the Campaign's request, and even though it never sought clarification from the Campaign despite multiple invitations from Plaintiff's attorney to "please let me know if your office has any questions about the request," Dkts. 1-7, 1-8, 1-9, the Bureau took the position that "the Campaign's FOIA request failed to reasonably describe the records it sought" and that the Bureau was therefore not required to conduct a search or produce responsive records, Dkt. 9 at 3. Among other things, the Bureau argued that the FOIA request failed to explain whether it sought communications between persons within *any* category of BLM staff identified in the request, or only communications between persons in *different* staff categories, and that "it is unclear whether James Galloway and Jimmy Galloway are the same person or different people." *Id.* at 4–5. Defendant requested that the Court dismiss the complaint with prejudice. *Id.* at 9.

Paradoxically, shortly before Defendant's counsel filed the motion arguing that the Bureau was unable to understand or process Plaintiff's request, the Bureau produced what it characterized as a "final response" of 97 pages of responsive records.  Dkt. 25-9 at 4–5 (Read Decl. ¶¶ 14, 17); Dkt. 26-1 at 4 (2d Perrin Decl. ¶ 16).  That production was overseen by Bernadette M. Read, a FOIA officer at the BLM New Mexico State Office who, at the time of the production, was unaware that litigation over the request had commenced in this Court.  Dkt. 25-9 at 5 (Read Decl. ¶ 15).  Defendant's counsel appeared to be equally unaware of the Bureau FOIA Officer's activities, as the motion to dismiss did not mention that the Bureau had, in fact, made a production in response to a FOIA request that the motion characterized as legally deficient and "fraught with not merely one ambiguity, but rather, seven overlapping ambiguities . . . [a]ny one of [which] would prevent a reasonable FOIA processor from ascertaining precisely which records the Campaign seeks."  Dkt. 9 at 7–8.

While the motion to dismiss was pending before the Court, new counsel for the Bureau reached out to the Campaign and attempted to negotiate the terms of a proposed search.  Dkt. 23-6 at 12 (Sorenson Decl. ¶ 29); Dkts. 25-1, 25-3.  The Campaign proposed a nonexhaustive list of proposed search terms, Dkt. 25-3 at 3, and discussions continued, but the parties had not reached agreement by the time the Court scheduled a hearing on Defendant's motion to dismiss for July 13, 2023, Dkt. 23-6 at 12 (Sorenson Decl. ¶ 29).

At that hearing, the Court quickly rejected the Bureau's motion to dismiss.  While acknowledging that the FOIA request was "not a picture of clarity," the Court concluded that it could "understand what [Plaintiff was] requesting."  Dkt. 18 at 2.  Specifically, the Court noted that the request sought "communications or records of communications between . . . employees of the Bureau of Land Management who were in the Oklahoma Field Office[,] [including] the

public affairs staff, the wild and burro specialists and the field managers," and that "the request is further narrowed by saying those communications that involve James Galloway, also known as Jimmy Galloway." *Id.* at 3. In other words, the request sought communications between those holding the identified positions in the Bureau's Oklahoma Field Office to the extent those communications included James ("Jimmy") Galloway. The Court then asked the Bureau's counsel: "[I]f I'm able to read it correctly like that, why is it a problem for the Bureau of Land Management? Isn't it sufficiently clear?" *Id.* After hearing from the Bureau's counsel, the Court indicated that it was the Court's "inclination . . . to deny the motion to dismiss" and to direct that the Bureau answer the complaint. *Id.* at 6–7. The parties, in turn, agreed to abide by the Court's reading of the Campaign's FOIA request, and the Court set a date for the Bureau to answer. *Id.* at 7. The Bureau did not object. *Id.* The Court further ordered the parties to confer and to propose a plan for the review and production of responsive records. *Id.* at 7–8. The Court's minute entry following the hearing clearly stated that the Bureau's motion to dismiss had been "DENIED." Min. Entry (July 13, 2023). The Bureau never questioned the accuracy of that minute entry.

A month later, the Bureau answered the complaint. Dkt. 14. As an attachment to the answer, Defendant included the Bureau's original response to the FOIA request on October 17, 2022, which stated that 40 documents totaling 97 pages had been released, with 14 documents released in their entirety and 26 documents partially redacted under FOIA Exemption 6. Dkt. 14-1 at 2–3. In light of that completed "final determination" of the FOIA request, the Bureau concluded its answer by stating that "Defendant denies that Plaintiff is entitled to the relief requested [in the complaint] *or to any relief whatsoever*." Dkt. 14 at 4, 6 (emphasis added). Then, in the first joint status report filed after Defendant's answer, on September 22, 2023, the

Bureau argued that it was premature to discuss a deadline for any further searches or productions of records, as the Bureau had not yet obtained a transcript of the Court's motion hearing and wished to "conduct any search by reference to the summary provided by the Court." Dkt. 15 at 1–2. The Court rejected that request, noting that Defendant "ha[s] had ample opportunity to obtain the transcript, and their failure to do so should not further delay these proceedings," and the Court ordered the Bureau to confer with the Campaign about responsive search terms. Min. Order (Sep. 25, 2023). The parties eventually agreed to the scope of the additional search, and on April 18, 2024, the Bureau produced 3,493 pages of responsive documents. Dkt. 20 at 1.

After reviewing the records, the Campaign informed the Court that it was "satisfied with the adequacy of the agency's search and its withholdings." Dkt. 21 at 1. The Campaign also stated that it intended to move for an award of attorney's fees and costs, unless the parties were able to negotiate a fee figure without the Court's involvement. *Id.* Those negotiations failed after Defendant's counsel informed the Campaign that he would seek approval from supervisors to engage in settlement negotiations only if Plaintiff's counsel were "willing to accept a significantly reduced amount than the $30k+ sought in the initial settlement demand." Dkt. 25-7 at 2.

In light of that impasse, the Campaign moved for attorney's fees and costs, Dkt. 23, and the Bureau opposed the motion, Dkt. 25. The Campaign initially requested a total award of $55,727.79, Dkt. 23 at 1, which increased to $87,109.92 including the cost of replying to the Bureau's opposition to the fee motion, Dkt. 26 at 5. The Court referred the fee dispute to Magistrate Judge Upadhyaya, Min. Order (Mar. 28, 2025), and Judge Upadhyaya issued a Report and Recommendation that proposed granting the motion in part and denying it in part for a final award total of $58,741.78, Dkt. 27 at 1. The Bureau objects to the R&R in its entirety,

maintaining the Campaign was neither eligible for nor entitled to any fee award, Dkt. 29 at 4,

while the Campaign asks the Court to adopt Judge Upadhyaya's calculations without alteration,

Dkt. 30 at 3.  The R&R and the Bureau's objections are now before the Court.

## II.  LEGAL STANDARD

Pursuant to 5 U.S.C. § 552(a)(4)(E)(i), the Court "may assess . . . reasonable attorney['s]

fees and other litigation costs reasonably incurred" by a FOIA plaintiff who "has substantially

prevailed."  The test for an award of fees "has two components: eligibility and entitlement."

*Gerhard v. Fed. Bureau of Prisons*, 258 F. Supp. 3d 159, 165 (D.D.C. 2017).  "The eligibility

prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees."

*Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (citation

omitted).  "If so, the court proceeds to the entitlement prong and considers a variety of factors to

determine whether the plaintiff *should* receive fees."  *Id.* (emphasis in original).  "To obtain

attorney['s] fees under FOIA, a plaintiff must satisfy" both prongs of the test.  *McKinley v. Fed.

Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014).  Moreover, if the plaintiff establishes

that it is both eligible for and entitled to fees, it must then demonstrate that the award sought is

"reasonable."  5 U.S.C. § 522(a)(4)(E)(i); *see also Elec. Priv. Info. Ctr. v. U.S. Dep't of

Homeland Sec.*, 197 F. Supp. 3d 290, 293 (D.D.C. 2016).

## III. ANALYSIS

### A.    Eligibility

The first, threshold question before the Court is whether the Campaign is eligible for

attorney's fees.  To be eligible, a FOIA plaintiff must have "obtained relief through either (I) a

judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or

unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5

U.S.C. § 552(a)(4)(E)(ii).  That second option permits recovery under a "catalyst theory," which

requires the plaintiff to demonstrate that "the institution and prosecution of the litigation caused the agency to release the documents obtained." *Grand Canyon Trust v. Bernhardt*, 947 F.3d 94, 97 (D.C. Cir. 2020) (per curiam) (citation modified).  The mere fact that the agency released documents after litigation commenced is insufficient; "the plaintiff has the burden of showing that it is more probable than not that the government would not have performed the desired act absent the lawsuit." *Id.* (citation modified).

Judge Upadhyaya concluded that the Campaign was eligible for attorney's fees because "it is more probable than not that the lawsuit caused the Bureau to complete its search and [to] release 3,500 pages of responsive documents."  Dkt. 27 at 7.  The Court agrees.  When this litigation commenced, the Bureau argued in its motion to dismiss that Plaintiff's FOIA request was fatally vague and that the Bureau was not required to respond.  Dkt. 9 at 1.  Even after the Court rejected Defendant's arguments at the hearing on July 13, 2023, the Bureau averred in its answer to the complaint that it had fully responded to the Campaign's request by releasing the 97 pages of records on October 17, 2022, and that the Campaign was not entitled to any further relief.  Dkt. 14 at 4, 6.  Following the Court's order directing the Bureau to discuss terms for a further search with the Campaign, Min. Order (Sep. 25, 2023), the parties negotiated the scope of a subsequent search, and Defendant produced 3,493 pages of responsive documents, Dkt. 20 at 1.  As Judge Upadhyaya explained, the Bureau thus changed its position regarding Plaintiff's FOIA request over the course of this litigation, doing so "not voluntarily or spontaneously" but only in response to the Court's orders and Plaintiff's efforts.  Dkt. 27 at 7.

The Bureau's objections to Judge Upadhyaya's R&R fail to persuade.  Much of the Bureau's argument stems from the faulty premise that its motion to dismiss was somehow "ultimately successful, even if it was eventually denied as moot," because it forced "Plaintiff to

stipulate to a reasonable construction of its FOIA request, which Defendant regarded (and still regards) as unduly vague and improper on its face." Dkt. 29 at 5–6 (citation modified). That is incorrect. To the contrary, at the hearing on the Bureau's motion to dismiss the Court concluded that it was able to "understand what [the Campaign was] requesting" and expressed confusion as to why it was "a problem for the Bureau of Land Management" to do so as well. Dkt. 18 at 2–3. The Court's description of its understanding of the request and inquiry about whether the parties disagreed—which served the interest of moving the case forward—should not and cannot be understood as agreeing with the Bureau that the Campaign's request was facially vague or improper. Like the Court, agencies are required to make reasonable efforts to give meaning to FOIA requests, including those that are less than pellucid. It is not enough merely to identify an ambiguity and, without making any effort to work through that ambiguity or to engage the requester, to declare that the ambiguity renders the request a nullity.

The Bureau also argues that because it was negotiating in good faith with the Campaign as to the scope of a further search at the time of the Court's intervention, Judge Upadhyaya erred in concluding that the prosecution of this case led to the eventual production of thousands of additional pages of responsive documents. Dkt. 29 at 7–9. The suggestion that the Bureau always intended to complete a second production of documents, independent of this litigation's outcome or the Court's intervention, is inconsistent with Defendant's own submissions in this case. Following the filing of Plaintiff's complaint, the Bureau did not represent to the Court that it was prepared to conduct a further search in response to Plaintiff's FOIA request. Instead, the Bureau first argued (and, apparently, continues to maintain) that the Campaign's request was facially invalid, Dkt. 9, and then claimed that Plaintiff was not entitled to any further relief other than the Bureau's original production of documents on October 17, 2022, Dkt. 14 at 4, 6. The

Court need not hold that the Bureau's negotiations were undertaken in bad faith to find that the Bureau changed its position, conducted a further search, and produced additional responsive records as a result of this litigation.

The Court, accordingly, finds that Plaintiff is eligible for attorney's fees.

## B.    Entitlement

Having found that the Campaign is eligible for attorney's fees and costs, the Court must decide whether the Campaign is entitled to relief.  In deciding whether a FOIA plaintiff is entitled to attorney's fees and costs, the Court must weigh four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *McKinley*, 739 F.3d at 711 (citation modified).  "[T]he first three factors assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage."  *Davy v. CIA*, 550 F.3d 1155, 1160 (D.C. Cir. 2008) ("*Davy II*").  The fourth factor, in contrast, considers whether the agency's position "had a reasonable basis in law," *Kwoka v. Internal Revenue Serv.*, 989 F.3d 1058, 1065 (D.C. Cir. 2021) (citation modified), and asks whether the agency was "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior," *McKinley*, 739 F.3d at 712 (internal quotation marks omitted).  No one factor is dispositive, and the Court has broad discretion to balance the factors in the context of an individual case.  *Morley v. CIA*, 894 F.3d 389, 391 (D.C. Cir. 2018) (per curiam).

Judge Upadhyaya determined that all four factors weigh in favor of a fee award in this case.  Dkt. 27 at 9.  The Court agrees.  As an initial matter, the Bureau does not meaningfully contest the second (commercial benefit to the plaintiff) and third (nature of the plaintiff's interest in the records) factors, Dkt. 29 at 10–12, and both factors strongly favor the Campaign's claim to

attorney's fees.  The Campaign is a nonprofit organization that filed this FOIA request in furtherance of its investigative and public education activities, Dkt. 23-3 at 1, 3–4, 12–13 (Perrin Decl. ¶¶ 3, 12–16, 66–73), and it lacks any separate commercial or pecuniary interest in the records that might militate against a fee award, *see Davy II*, 550 F.3d at 1161.

Defendant does dispute the first and fourth factors, but the Court, like Judge Upadhyaya, is unconvinced.  The first factor, the public benefit derived from the Campaign's request, turns on a two-part inquiry: "[1] the effect of the litigation; and [2] the potential public value of the information that the plaintiff sought."  Dkt. 27 at 10 (citing *Morley v. CIA* ("Morley I"), 810 F.3d 841, 844 (D.C. Cir. 2016)).  The first part presents the same basic question as Plaintiff's eligibility for fees—namely, "whether the litigation has caused the release of requested documents, without which the requester cannot be said to have substantially prevailed."  *Morley I*, 810 F.3d at 844.  The second part requires the Court to conduct "an *ex ante* assessment of the potential public value of the information requested," without focusing on whether the documents actually produced did or did not "prove to advance the public interest," which was, of course, unknowable at the time of the Campaign's original FOIA request.  *Id.*  In this case, the Campaign sought information on a matter of public concern—the BLM's administration of the Adoption Incentive Program—which has generated media attention and public interest.  Dkt. 23-3 at 3 (Perrin Decl. ¶ 13); *see Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 892 F. Supp. 2d 28, 51 (D.D.C. 2012) ("As the media coverage indicates, the *subject matter* contained in the records released as a result of the present action is newsworthy, and the disclosures in this case have added to the body of public knowledge on this issue of public importance." (emphasis in original)).  The Bureau's sole objection to Judge Upadhyaya's weighing of the public benefit factor merely repackages the argument that this litigation did not cause the production of any

additional records. Dkt. 29 at 10. The Court rejected that erroneous characterization of the record in its discussion of the Campaign's eligibility for attorney's fees, and it will do the same here.

Finally, the fourth factor looks to the reasonableness of the agency's actions and requires the Court to assess whether the Bureau has demonstrated "that it had any colorable or reasonable basis for not disclosing the material until after [the Campaign] filed suit." *Davy II*, 550 F.3d at 1163. Judge Upadhyaya determined that the Bureau had failed to meet its burden. As she explained, the Bureau offered no justification for failing timely and fully to respond to the Campaign's FOIA request, other than the (rejected) argument in its motion to dismiss that Plaintiff's request was too ambiguous to merit processing. Dkt. 27 at 13–14. In its objections to the R&R, the Bureau responds that Judge Upadhyaya improperly held, without evidence, that the motion to dismiss "was filed solely for the purposes of obstructing and delaying the processing of Plaintiff's FOIA request." Dkt. 29 at 11. It adds that it would be unjust (and would create perverse incentives) to punish an agency for agreeing "to process an initially improper FOIA request constructively amended by a plaintiff in litigation" by construing a motion to dismiss as having been filed for an improper purpose. *Id.* at 12.

The Bureau's arguments are mistaken. As discussed above, the Bureau's suggestion that the Campaign's FOIA request was deficient until the Court "amended" it at the motion hearing on July 13, 2023, is incorrect. To the contrary, the Court emphasized at that hearing that it was able to "understand what [the Campaign was] requesting" and that the request was "sufficiently clear." Dkt. 18 at 2–3. Moreover, to the extent it faced any genuine difficulty in understanding the Campaign's FOIA request at that time, the Bureau must accept a share of the blame. After all, it was the Bureau that failed to seek clarification from Plaintiff's counsel about the request,

despite multiple invitations to do so, for the fifteen-month period that Plaintiff waited for a response before filing this lawsuit. If the request was as deficient as the Bureau now suggests, it could have—and should have—promptly notified the Campaign about the asserted deficiency, and the Campaign could have either disputed that contention or submitted a new—and clarified—request.

In any event, the Court need not find that Defendant's motion to dismiss was filed for an improper purpose or in bad faith to find that the Bureau lacked a reasonable basis (1) for failing to respond to the Campaign's FOIA request in a timely fashion, (2) for moving to dismiss the Campaign's complaint on the ground that the Bureau could not discern the meaning of a FOIA request that the agency had already started to process, or (3) for delaying in agreeing to the terms of an acceptable search based on nothing more than counsel's unexplained recalcitrance in obtaining a transcript of the July 13 motion hearing. *See* Min. Order (Sep. 25, 2023). The Court, accordingly, concludes that the fourth factor favors Plaintiff.

Considered as a whole, then, the four factors weigh decidedly in favor of Plaintiff's entitlement to attorney's fees.

## C.    Fee Amount

With the Campaign's eligibility and entitlement to fees established, the final task is to calculate an appropriate fee figure. FOIA attorney's fees are calculated using the "lodestar" method, based on "the number of hours reasonably expended multiplied by a reasonable hourly rate." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 47 (D.D.C. 2016). The party seeking fees "bears the burden of demonstrating the reasonableness of both the number of hours and the hourly rate," and "[t]he Court has considerable discretion" in determining a reasonable fee figure. *Id.*

The Campaign's request for attorney's fees uses the hourly rate, based on an attorney's years of experience, set out in the Fitzpatrick Matrix—the standard method used by the Department of Justice for complex federal litigation in the District of Columbia. Dkt. 23-14 at 39; *see* Dkt. 23-9. The Bureau does not contest the use of the Fitzpatrick Matrix's hourly rates, Dkt. 23-6 at 10 (Sorenson Decl. ¶ 19); *see generally* Dkt. 25, so the only dispute concerns the reasonableness of the hours worked by the Campaign's attorneys in this case. The Campaign requested a total fee award of $87,109.92, including $479.05 in costs, $28,794.20 for the merits phase of the case, $7,831.60 for the (ultimately unsuccessful) efforts at settlement, $31,252.10 to draft the initial motion for fees, $23,337.70 to draft the reply in support of the fee motion, and a voluntary "5% reduction as part of billing judgment." Dkt. 26 at 5. In the R&R, Judge Upadhyaya determined that some of the Campaign's reported hours were unreasonable, in particular the "excessive" hours devoted to briefing the fee motion and reply, and she recommended a final award total (including a 5% discount) of $58,741.78. Dkt. 27 at 23–24. That figure includes $455.10 in costs, $27,354.49 for the merits phase, $3,577.70 for settlement negotiations, and $27,354.49 for the fee dispute. *Id.* at 24. The Campaign does not contest any of Judge Upadhyaya's recommendations. Dkt. 30 at 3. Although the Bureau disagrees with Judge Upadhyaya's analysis, Dkt. 29 at 12, its arguments are unpersuasive.

First, the Bureau argues that the Campaign's fee request for the time spent opposing Defendant's motion to dismiss is unreasonable, both because the Campaign "did not successfully oppose" the motion and because the Campaign's recorded hours—36.2 hours writing the opposition to the motion and 11 hours preparing for the hearing—are excessive. *Id.* at 12–14. The Court has already explained why the Bureau's contention that it prevailed on its motion to dismiss is incorrect. As for the hours devoted to opposing that motion, the Court agrees with

Judge Upadhyaya that it was not unreasonable for Plaintiff to spend 36.2 hours researching and writing its 23-page opposition to the motion to dismiss, Dkt. 10, which raised a series of attacks on the Campaign's FOIA request, *see* Dkt. 27 at 16–17.  The Court also agrees that it was reasonable for Plaintiff's attorneys to spend 11 hours preparing for (and attending) the hearing on the motion.  Although the Bureau argues that such preparation time was excessive given that the hearing lasted only fifteen minutes, Dkt. 29 at 13–14, it was not possible for Plaintiff's counsel to know in advance of the hearing how long the hearing would take and which of the many issues raised in the motion to dismiss they would need to address.  The Court, accordingly, finds that Plaintiff's preparation time was reasonable.

Second, the Bureau argues that Plaintiff is not entitled to attorney's fees for the time spent reviewing Defendant's final production of documents, because such review would have been required even had the records been produced without litigation and the Campaign ultimately did not contest the Bureau's final search or withholdings.  Dkt. 29 at 14–15. Decisions in this district have set forth a variety of views on whether FOIA's provision for "reasonable attorney['s] fees and other litigation costs," 5 U.S.C. § 552(a)(4)(E), authorizes a fee award for the time spent reviewing an agency's production of documents, *compare Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Just.*, 825 F. Supp. 2d 226, 231 (D.D.C. 2011) ("Plaintiff is not entitled to recover for time spent reviewing the documents it instituted this lawsuit to obtain" as "the cost of reviewing documents produced in response to a FOIA request is simply the price of making such a request"), *with Reyes v. U.S. Nat'l Archives & Recs. Admin.*, 356 F. Supp. 3d 155, 172 (D.D.C. 2018) ("Plaintiff's counsel needed to review the documents before they could know whether they would need to challenge any disclosures or

redactions.  Accordingly, the Court concludes that the review of disclosed records was a

litigation cost for which Plaintiff can recover.").

The Court agrees with Judge Upadhyaya that, on the particular facts of this case,

Plaintiff's request was reasonable.  For present purposes, the Court assumes—without

deciding—that time spent reviewing records in just the same manner that the requester would

have done had the records been released without litigation may fall outside the bounds of a

reasonable fee application.  The Court also understands that, here, the Campaign did not raise

any additional objections or seek any additional records after it reviewed the final response that it

obtained in this case.  But these premises do not support the conclusion that the Campaign's

review of the records was unrelated to its litigation of the case or that it merely duplicated a cost

that the Campaign would have incurred even if the Bureau had promptly and fully responded to

its FOIA request.  To the contrary, having litigated this case over a period of almost two years,

the Campaign reasonably took the time to review the responsive records, not merely to satisfy

the curiosity that prompted it to file its FOIA request in the first place, but to ensure that nothing

further remained to litigate.  In this respect, it would make little sense to conclude that the

Campaign would be entitled to recover the related fees had it found reason to object but that its

efforts should be deemed unreasonable merely because, having checked, it was satisfied.

Plaintiff's counsel was not analyzing the records to determine whether or how they might

advance the Campaign's advocacy agenda or to look for tidbits to include in public

communications.  Rather, they report expending less than six hours reviewing the relevant

material in the context of determining, in coordination with their client, whether the Campaign

"was satisfied with the agency's search and the records released."  Dkt. 26-6 at 8 (2d Sorenson

Decl. ¶ 30).  Such work, as Judge Upadhyaya noted, "is necessarily part of FOIA litigation."
Dkt. 27 at 18.

Third, Defendant objects to Judge Upadhyaya's (reduced) award of fees for the time
devoted to the unsuccessful negotiation over attorney's fees because, in the Bureau's view,
Plaintiff "unnecessarily prolong[ed] this case" and "made unreasonably high settlement
demands."  Dkt. 29 at 15–16.  This argument principally rehashes claims that the Court has
already rejected.  The Bureau contends that Plaintiff's initial settlement demand unreasonably
sought "compensation for work that was either unnecessary or non-compensable" based on the
theory that all of Plaintiff's litigation efforts in this case were unnecessary and unavailing
because the Bureau's motion to dismiss was successful and the Bureau (notwithstanding that
motion to dismiss) always intended to complete the full production of records that Plaintiff
ultimately obtained.  *Id*.  Because the Court concludes otherwise, and agrees with Judge
Upadhyaya that Plaintiff was both eligible for and entitled to attorney's fees, the Court also
agrees that Plaintiff's attempt to obtain those fees via settlement was reasonable.

Fourth, Defendant argues that Plaintiff's time entries are generally "vague," "of uncertain
relevance," "duplicative," and "otherwise unnecessary."  *Id.* at 16.  Judge Upadhyaya rejected
this contention, finding that the Bureau's largely conclusory and underspecified critiques, which
the Bureau "failed to sufficiently explain or substantiate," did not overcome the presumptive
reasonableness of the Campaign's timekeeping.  Dkt. 27 at 20–22.  In its opposition to the R&R,
the Bureau principally argues that Judge Upadhyaya misread the relevant precedent, *Covington
v. District of Columbia*, 57 F.3d 1101 (D.C. Cir. 1995), to hold that Plaintiff's *timekeeping* was
entitled to a presumption of reasonableness, as opposed to Plaintiff's *hourly rates*—which, as
discussed above, the Bureau is not contesting.  Dkt. 29 at 16–17.

The Court need not address the scope of *Covington* to agree with Judge Upadhyaya that the Bureau's challenges to Plaintiff's time entries are unavailing.  In its original opposition to the fee motion, which the Bureau incorporates by reference (and without adding meaningful additional detail) in its opposition to the R&R, *id.* at 17, the Bureau asserts that the Campaign seeks to recover fees "for vague, unnecessary, and duplicative work," Dkt. 25 at 26.  But with just a few exceptions, the Bureau never identifies which of Plaintiff's time entries, let alone the total dollar amount of claimed fees, it maintains meet that description.  And the few instances where the Bureau does attempt to offer more detail are unpersuasive.  The Bureau argues, for example, that Plaintiff devoted (unspecified) "copious hours" to tasks like client communications and reviewing case materials without offering any explanation as to why these activities were unnecessary or duplicative.  *Id.*  The Bureau also objects to Plaintiff's billing around seven hours to drafting the complaint, which Defendant characterizes as "relatively insubstantial and boilerplate."  *Id.*  Plaintiff's complaint might not qualify as a *tour de force* in legal advocacy, *see generally* Dkt. 1 (Compl.), and seven hours might mark the outer boundary of the time reasonably required to draft a garden-variety FOIA complaint.  But the Court agrees with Judge Upadhyaya that the time Plaintiff's counsel spent writing, editing, and filing that necessary document "does not reflect overbilling."  Dkt. 27 at 21.

Finally, the Bureau objects that the proposed fee award for Plaintiff's efforts to recover fees for the time spent drafting the pending motion—that is, its request for an award of "fees on fees," *Heard v. District of Columbia*, No. 2-cv-296, 2006 WL 2568013, at *19 (D.D.C. Sep. 5, 2006)—is excessive, Dkt. 29 at 18–21.  "While it is settled in this circuit that hours reasonably devoted to a request for fees are compensable, fees on fees must be reasonable, and not excessive."  *Urb. Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301, 326 (D.D.C. 2020) (citation

modified).  Judge Upadhyaya proposed significantly reducing Plaintiff's requested fees-on-fees award from the original $51,860.31 (with a 5% discount) to $27,354.49, "an amount equal to the fees Plaintiff may recover for the merits phase."  Dkt. 27 at 22–24 (citing *Los Padres ForestWatch v. U.S. Forest Serv.*, 775 F. Supp. 3d 353, 373 (D.D.C. 2025)).  The Bureau contends that even this lesser figure is unwarranted because Plaintiff's fees motion "relie[d] on mischaracterizations of the factual record" and was "directly refuted" by the Bureau's filings in this case.  Dkt. 29 at 19.

 The Court disagrees with the Bureau's general framing of the fee dispute, and it concludes that Judge Upadhyaya's proposed award of fees on fees is reasonable.  As the Court held in *Los Padres ForestWatch*, a fees-on-fees award of 100% of the fees-on-the-merits figure, while higher than might be appropriate "in the ordinary course," is merited where, as here, that increased total is substantially attributable to "the agency's own decision to treat the fees litigation as an entirely new and wide-ranging battleground."  775 F. Supp. 3d at 374.  The Bureau's sweeping opposition to each aspect of the Campaign's fee motion, including the Bureau's efforts to relitigate almost every stage of this proceeding, required the Campaign to respond in kind and, thus, to devote far more time to litigating the fee dispute than is required in the typical case.  Although the Bureau was, of course, entitled to contest the Campaign's fee petition on multiple grounds, it "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."  *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (en banc).

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for attorney's fees and costs, Dkt. 23, is

hereby **GRANTED** in part and **DENIED** in part.  The Court will award the Campaign a total of

$58,741.78 in fees and costs.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  January 28, 2026